[827 NE2d 758, 794 NYS2d 700]

STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., Appellant, v
ROBERT MALLELA et al., Respondents.

Argued February 8, 2005; decided March 29, 2005

314

## POINTS OF COUNSEL

*Rivkin Radler LLP,* Uniondale (*Evan H. Krinick, Cheryl F. Korman* and *Stuart M. Bodoff* of counsel), and *KMZ Rosenman LLP,* Chicago, Illinois (*Ross O. Silverman* and *Gil M. Soffer* of counsel), for appellant. A medical corporation that is fraudulently incorporated under Business Corporation Law §§ 1507 and 1508 and Education Law § 6507 (4) (c) is not entitled to be reimbursed by insurers under Insurance Law § 5101 *et seq.* and its implementing regulations for medical services rendered by licensed medical practitioners. (*Matter of Medical Socy. of State of N.Y. v Serio,* 100 NY2d 854; *Matter of Nicholas v Kahn,* 47 NY2d 24; *Blue Cross & Blue Shield of Cent. N.Y. v McCall,* 89 NY2d 160; *Ostrer v Schenck,* 41 NY2d 782; *Breen v Cunard Lines S.S. Co.,* 33 NY2d 508; *Matter of Council of City of N.Y. v Public Serv. Commn. of State of N.Y.,* 99 NY2d 64; *Matter of Marzec v DeBuono,* 95 NY2d 262; *Matter of John Paterno, Inc. v Curiale,* 88 NY2d 328; *Matter of New York Pub. Interest Research Group v New York State Dept. of Ins.,* 66 NY2d 444; *Matter of Medical Socy. of State of N.Y. v Levin,* 280 AD2d 309.)

*Law Office of Joseph J. LaBarbera, P.C.,* Brooklyn (*Joseph J.*

*LaBarbera* of counsel), for Astoria Physical Medicine and Rehabilitation, P.C. and another, respondents. I. The interpretations of the Superintendent of Insurance of the State of New York are inconsistent with the legislative purpose in enacting the No-Fault Law and should not be accorded any deference. (*Matter of Medical Socy. of State of N.Y. v Levin,* 185 Misc 2d 536, 280 AD2d 309.) II. Terms must be given their natural or obvious meaning, must be interpreted with consistency and effect given to such obvious meaning in the absence of express language to the contrary. (*Matter of Excellus Health Plan v Serio,* 2 NY3d 166.) III. The interpretation of licensing laws both generally and within the context of the No-Fault Law is a special skill delegated to the Commissioner of Health of the State of New York by the Legislature and accordingly the Superintendent of Insurance of the State of New York's interpretation is not to be accorded deference in the resolution of the certified question. (*Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451; *Matter of Lippman v Public Empl. Relations Bd.,* 263 AD2d 891.) IV. Permitting an insurer to inquire into the validity of a medical corporation's license or a health provider's compliance with licensing laws would defeat the primary purpose of the no-fault regulations. (*Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451; *Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co.,* 90 NY2d 274.) V. The certified question must be answered in the affirmative, as to find otherwise, the Court will be implying a right of inquiry into licensure compliance as part of the claims process where such process was deliberatively excluded from the no-fault statutes under common canons of construction. VI. Plaintiff's citation to arbitration decisions and case law does not support a judgment that plaintiff is not required to pay based on fraudulent corporate structure. (*Universal Acupuncture Pain Servs., P.C. v State Farm Mut. Auto. Ins. Co.,* 196 F Supp 2d 378.) VII. So long as the actual health providers of services were licensed to provide the services, the issue of the professional corporation defendants' formation is not a basis to deny claims. (*Charlebois v Weller Assoc.,* 72 NY2d 587; *Easterson v Long Is. Jewish Med. Ctr.,* 156 AD2d 636, 76 NY2d 704, 889.) VIII. The number of potential objections to providers' licensing compliance based on interpretation of the corporate practice of medicine by insurers would cause an unfettered and arbitrary obstruction of the speedy no-fault claims process. (*Charlebois v Weller Assoc.,* 72 NY2d 587.)

*Friedman Harfenist Langer & Kraut,* Lake Success (*Steven J. Harfenist* and *Neil Torczyner* of counsel), for Valley Physical

Medicine and Rehabilitation, P.C. and others, respondents. I. New York's No-Fault Law does not allow an insurer to look beyond a facially valid license. (*Montgomery v Daniels,* 38 NY2d 41; *Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co.,* 90 NY2d 274; *Pajak v Pajak,* 56 NY2d 394; *Bay Shore Family Partners v Foundation of Jewish Philanthropies of Jewish Fedn. of Greater Fort Lauderdale,* 239 AD2d 373; *Nyack Hosp. v Village of Nyack Planning Bd.,* 231 AD2d 617; *Aetna Life & Cas. Co. v Nelson,* 67 NY2d 169; *Country-Wide Ins. Co. v 3-M Prod. Sales,* 96 AD2d 569; *Bernstein v Greater N.Y. Mut. Ins. Co.,* 706 F Supp 287; *Country Wide Ins. Co. v Osathanugrah,* 94 AD2d 513, 62 NY2d 815; *State Farm Mut. Auto. Ins. Co. v Regional Tr. Serv.,* 79 AD2d 858.) II. The no-fault regulations and statutory scheme cannot be construed to support an insurer's ability to look beyond a facially valid license. (*Breen v Cunard Lines S.S. Co.,* 33 NY2d 508; *Matter of New York Pub. Interest Research Group v New York State Dept. of Ins.,* 66 NY2d 444; *Matter of Medical Socy. of State of N.Y. v Serio,* 100 NY2d 854; *Matter of Beer Garden v New York State Liq. Auth.,* 79 NY2d 266; *T.D. v New York State Off. of Mental Health,* 228 AD2d 95; *Matter of Dworman v New York State Div. of Hous. & Community Renewal,* 94 NY2d 359; *Matter of Union Indem. Ins. Co. of N.Y.,* 92 NY2d 107; *Commissioners of State Ins. Fund v Brooklyn Barber Beauty Equip. Co.,* 191 Misc 2d 1; *Matter of Senior Life Mgt. v Dowling,* 225 AD2d 224; *Colten v Kentucky,* 407 US 104.) III. State Farm Mutual Automobile Insurance Co. has failed to plead causes of action for fraud or unjust enrichment. (*People v Buffalo Stone & Cement Co.,* 131 NY 140; *Matter of Brooklyn El. R.R. Co.,* 125 NY 434; *Universal Acupuncture Pain Servs., P.C. v State Farm Mut. Auto. Ins.,* 196 F Supp 2d 378; *New York Cent. Mut. Ins. Co. v 563 Grand Med., P.C.,* 4 Misc 3d 1020[A]; *Graubard Mollen Dannett & Horowitz v Moskovitz,* 86 NY2d 112; *Stuart Silver Assoc. v Baco Dev. Corp.,* 245 AD2d 96; *Marcus v AT&T Corp.,* 138 F3d 46; *Lake Minnewaska Mtn. Houses v Rekis,* 259 AD2d 797; *Wiener v Lazard Freres & Co.,* 241 AD2d 114; *Schank v Schuchman,* 212 NY 352.)

*Hoffman, Einiger & Polland, PLLC,* New York City (*Mark L. Furman* of counsel), and *Israel, Israel & Purdy, LLP,* Great Neck (*Veronica Renta Irwin, Stuart M. Israel* and *William M. Purdy* of counsel), for Yonkers Medical Services, P.C. and others, respondents. I. In the absence of other fraud allegations, an insurer may not refuse to pay a benefits claim based upon an allegation that, in seeking its original certificate of authority to do business as a professional medical services corporation, the

corporation had a "true owner" who did not possess a license to practice medicine. (*Matter of Medical Socy. of State of N.Y. v Levin,* 185 Misc 2d 536, 280 AD2d 309; *Walton v Lumbermens Mut. Cas. Co.,* 88 NY2d 211; *Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co.,* 90 NY2d 274; *Aetna Life & Cas. Co. v Nelson,* 67 NY2d 169; *Montgomery v Daniels,* 38 NY2d 41; *Central Gen. Hosp. v Chubb Group of Ins. Cos.,* 90 NY2d 195; *Ostrer v Schenck,* 41 NY2d 782; *Matter of New York Pub. Interest Research Group v New York State Dept. of Ins.,* 66 NY2d 444; *Vinings Spinal Diagnostic v Liberty Mut. Ins. Co.,* 186 Misc 2d 287; *Matter of Pradip Das/N.Y. Med. Rehab v Allstate Ins. Co.,* 297 AD2d 321.) II. Appellant's common-law fraud and unjust enrichment claims were properly dismissed. (*Katz v Zuckermann,* 126 Misc 2d 135, 119 AD2d 732; *United Calendar Mfg. Corp. v Huang,* 94 AD2d 176; *Morissette v United States,* 342 US 246; *Murray Walter, Inc. v Sarkisian Bros.,* 107 AD2d 173; *O'Brien Investigations v Zorn,* 263 AD2d 812; *Remba v Federation Empl. & Guidance Serv.,* 76 NY2d 801; *Deutsch v Health Ins. Plan of Greater N.Y.,* 573 F Supp 1443; *Universal Acupuncture Pain Servs., P.C. v State Farm Mut. Auto. Ins.,* 196 F Supp 2d 378; *Matter of Bingham v Town Bd. of Town of Burlington,* 103 AD2d 923; *Brener & Lewis v Fawcett Publs.,* 197 Misc 207, 276 App Div 994.)

*Goodwin Proctor LLP,* New York City (*Jeffrey A. Simes* and *Richard M. Strassberg* of counsel), and *La Sorsa & Beneventano,* White Plains (*Gregory M. La Sorsa* of counsel), for Dr. Dipak Nandi and others, respondents. State Farm Mutual Automobile Insurance Co.'s view of the No-Fault Law is inconsistent with the law's purpose and structure and would do violence to what the Legislature sought to achieve. (*Matter of Rosenblum [Government Empls. Ins. Co.],* 41 NY2d 966; *Matter of Sutka v Conners,* 73 NY2d 395; *Walton v Lumbermens Mut. Cas. Co.,* 88 NY2d 211; *Argentina v Emery World Wide Delivery Corp.,* 93 NY2d 554; *Montgomery v Daniels,* 38 NY2d 41; *Agnostakios v Laureano,* 85 Misc 2d 203; *American Tr. Ins. Co. v Sartor,* 3 NY3d 71; *Raritan Dev. Corp. v Silva,* 91 NY2d 98; *Servomation Corp. v State Tax Commn.,* 51 NY2d 608; *Doctors Council v New York City Employees' Retirement Sys.,* 71 NY2d 669.)

*Eliot Spitzer, Attorney General,* New York City (*Daniel Smirlock* and *Robert H. Easton* of counsel), for Gregory V. Serio, amicus curiae. A fraudulently formed medical corporation is not eligible for reimbursement under the No-Fault Law. (*Matter of*

*ATM One v Landerverde,* 2 NY3d 472; *Matter of Medical Socy. of State of N.Y. v Serio,* 100 NY2d 854; *Matter of Notre Dame Leasing v Rosario,* 2 NY3d 459; *Matter of Medical Socy. of State of N.Y. v Levin,* 280 AD2d 309; *Matter of Plato's Cave Corp. v State Liq. Auth.,* 68 NY2d 791; *Galbreath-Ruffin Corp. v 40th & 3rd Corp.,* 19 NY2d 354.)

*Locks Law Firm, PLLC,* New York City (*Seth R. Lesser* and *Andrew P. Bell* of counsel), *Thomas W. Alfano* and *Belesi & Donovan, P.C.,* Garden City (*John Belesi* of counsel), for Meridian Acupuncture Care, amicus curiae. A private right of action exists for violation of the corporate practice prohibition of Business Corporation Law § 1504. (*Sheehy v Big Flats Community Day,* 73 NY2d 629; *Uhr v East Greenbush Cent. School Dist.,* 94 NY2d 32.)

*Cadwalader, Wickersham & Taft LLP,* New York City (*Francis J. Serbaroli* and *William J. Natbony* of counsel), and *Short & Billy, P.C.* (*Skip Short* of counsel), for Allstate Insurance Company and others, amici curiae. I. Fraudulently formed medical practices are part of the pervasive problem of no-fault fraud and constitute a real danger to patients. (*Matter of Medical Socy. of State of N.Y. v Serio,* 100 NY2d 854; *United States v Lucien,* 347 F3d 45; *Matter of Co-Operative Law Co.,* 198 NY 479; *McConnell v Commonwealth Pictures Corp.,* 7 NY2d 465.) II. The 30-day prompt payment rule does not bar affirmative recovery actions against fraudulently-formed medical practices. (*Montgomery v Daniels,* 38 NY2d 41; *Dermatossian v New York City Tr. Auth.,* 67 NY2d 219; *Liberty Mut. Ins. Co. v United States,* 490 F Supp 328; *Matter of New York State Assn. of Life Underwriters v New York State Banking Dept.,* 83 NY2d 353; *Matter of Gaines v New York State Div. of Hous. & Community Renewal,* 90 NY2d 545; *Matter of Rodriguez v Perales,* 86 NY2d 361; *Matter of Morris v County Bd. of Assessors,* 35 NY2d 624; *Matter of John Paterno, Inc. v Curiale,* 88 NY2d 328; *Udall v Tallman,* 380 US 1; *Lyng v Payne,* 476 US 926.) III. Insurance Law § 5106 also does not bar the denial of no-fault claims on grounds of fraudulent corporate formation beyond the 30-day period. (*Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co.,* 90 NY2d 274; *Central Gen. Hosp. v Chubb Group of Ins. Cos.,* 90 NY2d 195; *McConnell v Commonwealth Pictures Corp.,* 7 NY2d 465.)

*Pastel & Rosen, LLP,* Albany (*Robert Pastel* of counsel), for New York Insurance Association, Inc., amicus curiae. The Su-

perintendent of Insurance's prohibition against reimbursing fraudulently incorporated medical providers is not unreasonable.

## OPINION OF THE COURT

ROSENBLATT, J.

On this certified question from the United States Court of Appeals for the Second Circuit, we are asked whether, under our "no-fault" insurance laws (see Insurance Law § 5101 et seq. and implementing regulations), insurance carriers may withhold payment for medical services provided by fraudulently incorporated enterprises to which patients have assigned their claims. We conclude that they may.

Patients covered by no-fault insurance often assign their claims to their health care providers rather than seek reimbursement from insurance carriers directly (see 11 NYCRR 65-3.11). Regulations require the carriers to make prompt decisions on claims once the provider has furnished adequate factual support (see 11 NYCRR 65.15).

This case began when State Farm filed a complaint in the United States District Court for the Eastern District of New York seeking a judgment declaring that it need not reimburse defendants—fraudulently incorporated medical corporations—for assigned claims submitted under no-fault. The complaint also sought equitable relief and damages against defendant companies and individuals for unjust enrichment and fraud. State Farm alleged, in essence, that to obtain payments from the carriers under the requirements of no-fault insurance, defendants willfully evaded New York law prohibiting nonphysicians from sharing ownership in medical service corporations.[1]

According to the complaint, the unlicensed defendants paid physicians to use their names on paperwork filed with the State to establish medical service corporations. Once the medical service corporations were established under the facially valid cover of the nominal physician-owners, the nonphysicians actually operated the companies. To maintain the appearance that the physicians owned the entities, the nonphysicians caused the corporations to hire management companies (owned by the nonphysicians), which billed the medical corporations inflated rates

---

1. See e.g. Business Corporation Law § 1507 ("A professional service corporation may issue shares only to individuals who are authorized by law to practice in this state a profession which such corporation is authorized to practice . . .").

for routine services. In this manner, the actual profits did not go to the nominal owners but were channeled to the nonphysicians who owned the management companies.

Notably, State Farm never alleged that the actual care received by patients was unnecessary or improper. The patients insured by State Farm presumably received appropriate care from a health professional qualified to give that care. State Farm's complaint centers on fraud in the corporate form rather than on the quality of care provided.

The Federal District Court dismissed State Farm's complaint, holding that defendants' noncompliance with the licensing and incorporation statutes did not extinguish State Farm's duty to pay, so long as the actual providers acted within the scope of their licenses in rendering care. The Second Circuit then certified to this Court the question whether

> "a medical corporation that was fraudulently incorporated under N.Y. Business Corporation Law §§ 1507, 1508, and N.Y. Education Law § 6507(4)(c) [is] entitled to be reimbursed by insurers, under New York Insurance Law §§ 5101 *et seq.*, and its implementing regulations, for medical services rendered by licensed medical practitioners" (372 F3d 500, 510 [2004]).

We accepted the certification and now answer that such corporations are not entitled to reimbursement.

Insurance Law § 5102 *et seq.* requires no-fault carriers to reimburse patients (or, as in this case, their medical provider assignees) for "basic economic loss." Interpreting the statute, the Superintendent of Insurance promulgated 11 NYCRR 65-3.16 (a) (12) (effective April 4, 2002) and excluded from the meaning of "basic economic loss" payments made to unlicensed or fraudulently licensed providers, thus rendering them ineligible for reimbursement.[2]

If State Farm's allegations are true, as we must construe them to be at this stage, the defendant companies undisputedly fail to meet the applicable state licensing requirements, which

---

**2.** *See* 11 NYCRR 65-3.16 (a) (12) ("A provider of health care services is not eligible for reimbursement under section 5102 (a) (1) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement . . ."). In his amicus brief, the Superintendent asserts that he promulgated this rule to combat rapidly growing incidences of fraud in the no-fault regime, fraud that he has identified as correlative with the corporate practice of medicine by nonphysicians.

prohibit nonphysicians from owning or controlling medical service corporations. Furthermore, a fraudulently incorporated medical company is "[a] provider of health care services" within the meaning of the regulation.

■ Defendants contend they are entitled to reimbursement even if fraudulently licensed. They first argue that the actual care that patients received was within the scope of the licenses of those who treated the patients. Defendants posit that this licensing compliance brings them within the regulatory framework for reimbursement. We disagree. The fact remains that the reimbursement goes to the medical service corporation that exists to receive payment only because of its willfully and materially false filings with state regulators.

Defendants also argue that the quoted regulation conflicts with the prompt payment goals of the no-fault statutes. The Second Circuit treated this issue as a difficult policy balance: on the one hand, there is our State's prohibition against lay ownership of shares in medical corporations (and the accompanying potential for fraud), and on the other, our encouragement of prompt payment of insurance claims, as reflected in the statutes.

■ The regulation is valid. We are guided by the well-established principle of administrative law that the Superintendent's "interpretation, if not irrational or unreasonable, will be upheld in deference to his special competence and expertise with respect to the insurance industry, unless it runs counter to the clear wording of a statutory provision" (*Matter of New York Pub. Interest Research Group v New York State Dept. of Ins.*, 66 NY2d 444, 448 [1985]). Where, as here, the Superintendent has properly crafted a rule within the scope of his authority, that rule has the force of law and represents the policy choice of this State.[3]

The Superintendent's regulation allowing carriers to withhold reimbursement from fraudulently licensed medical corporations governs this case. We hold that on the strength of this regulation, carriers may look beyond the face of licensing documents to identify willful and material failure to abide by state and local law. Defendants argue that the carriers will

---

3. We have already unanimously concluded that the regulation is within the Superintendent's authority to issue and will not disturb that result (*see Matter of Medical Socy. of State of N.Y. v Serio*, 100 NY2d 854, 866 [2003] ["Here, however, the challenged regulations create not a new category of exclusion, but rather merely a condition precedent with which all claimants must comply in order to receive benefits under the statute."]).

turn this investigatory privilege into a vehicle for delay and recalcitrance.

The regulatory scheme, however, does not permit abuse of the truth-seeking opportunity that 11 NYCRR 65-3.16 (a) (12) authorizes. Indeed, the Superintendent's regulations themselves provide for agency oversight of carriers, and demand that carriers delay the payment of claims to pursue investigations solely for good cause (see 11 NYCRR 65-3.2 [c]). In the licensing context, carriers will be unable to show "good cause" unless they can demonstrate behavior tantamount to fraud. Technical violations will not do. For example, a failure to hold an annual meeting, pay corporate filing fees or submit otherwise acceptable paperwork on time will not rise to the level of fraud. We expect, and the Legislature surely intended, vigorous enforcement action by the Superintendent against any carrier that uses the licensing-requirement regulation to withhold or obstruct reimbursements to nonfraudulent health care providers.

The Second Circuit questioned whether, if the fraudulent corporations were not entitled to reimbursement, State Farm could recover money already paid out under theories of fraud or unjust enrichment. Because we rest our holding on the Superintendent's amended regulation declaring fraudulently licensed corporations ineligible for reimbursement, no cause of action for fraud or unjust enrichment would lie for any payments made by the carriers before that regulation's effective date of April 4, 2002. State Farm's complaint does not clearly indicate, one way or the other, whether it has paid money to defendants after the amended regulation took effect. We therefore answer only the certified question and decline to consider whether State Farm has alleged sufficient facts to support causes of action for fraud or unjust enrichment.

Based on the foregoing, the certified question should be answered in the negative.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, GRAFFEO, READ and R.S. SMITH concur.

Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.17 of the Rules

of Practice of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered in the negative.