*830 OPINION OF THE COURT
Bernice D. Siegal, J.
The within action to recover unpaid no-fault benefits came before the court by defendant’s order to show cause moving to stay some 60 pending actions, to consolidate the matters for the purposes of amending the answers to include an affirmative defense of fraud in the incorporation of the provider professional corporation and for such other relief as the court deems just, proper and equitable. As this order to show cause was brought on the heels of the Court of Appeals decision in State Farm Mut. Auto. Ins. Co. v Mallela (4 NY3d 313 [2005] [hereinafter referred to as Mallela III]), and given the significance of the court’s determination herein, the matter was set down for oral argument to aid in the court’s deliberation. For the reasons set forth below and in light of the Court of Appeals’ recent pronouncements, based upon the most favorable reading of the facts and the documents submitted by defendant (which, for the purposes of this motion, plaintiff does not at this point dispute), the court grants defendant’s prayer for relief to the extent of consolidating the 61 actions with the within matter for the purposes of amending the answer and setting same down for a framed issue hearing on August 2, 2005 as to whether the plaintiff professional corporations were fraudulently incorporated under Business Corporation Law §§ 1507 and 1508 and Education Law § 6507 (4) (c). The defendant shall amend and serve its answer in the form annexed to defendant’s motion papers as exhibit F together with a copy of this decision within 10 days from date of entry of the within order.
The relevant allegations and arguments are as follows:
Metroscan Imaging EC., the provider in the instant matter, is one of at least four corporations purportedly incorporated by one Herbert Rabiner, M.D. Dr. Rabiner, on behalf of the professional corporations, entered into a management agreement with Metroscan Resonance Imaging, Inc. and Earkway Magnetic Imaging Resonance Imaging, Inc. (collectively referred to as the Manager) whereby the medical groups pay for the “management and administrative services, the provision and maintenance of space and equipment, the furnishing of supplies and support personnel and other services” for fees (e.g., $32,000,000 for the first year), and further provided other rights, including a right of first refusal by the Manager when a shareholder of the professional corporation sought to sell. Defendant alleges that “Dr. Rabner [sic] sold his medical license to those entities named
*831 above to maintain the appearance that the companies were owned by a physician. When in actuality the corporate entities were owned, controlled and operated by non-physicians.” (Affirmation of Louis F. Chisari, Esq., dated Apr. 4, 2005.) Defendants state that these allegations form, in essence, a “founded belief” that the medical professional corporations were fraudulently incorporated and, if the court finds such fraudulent incorporations, the insurer is under no obligation to reimburse the providers pursuant to the recent Court of Appeals decision in Mallela III. Plaintiff argues that fraud in the incorporation is a defense that does not vitiate coverage (see Central Gen. Hosp. v Chubb Group of Ins. Cos., 90 NY2d 195 [1997]) and, in any event, that these claims are not subject to the amended regulations which, concededly, would provide that insurers are not required to reimburse professional corporations that have been fraudulently incorporated (11 NYCRR 65-3.16 [a] [12]).
Analysis and Conclusions
Heretofore, the Court of Appeals has bowed to the express purposes in the now decades old Comprehensive Motor Vehicle Insurance Reparations Law, commonly known as New York’s No-Fault Insurance Law. (Insurance Law § 5101 et seq.) “No-fault reform was enacted to provide prompt uncontested, first-party insurance benefits. That is part of the price paid to eliminate common-law contested suits.” (Presbyterian Hosp. in City of N.Y. v Maryland Cas. Co., 90 NY2d 274, 285 [1997] [citation omitted].) Presbyterian and its progeny continue to limit the options of insurers binding them, not inappropriately nor extrajudicially, with strict deadlines and procedures and, if not adhered to, excluding all but a few diehard defenses as to payment (see Central Gen. Hosp. v Chubb Group, supra [the so-called “lack of coverage” defense]). Trial and appellate courts have charted a course with Presbyterian and Chubb as intractable guideposts, refusing to permit insurers to interpose various defenses at the time of litigation, either pursuant to the Presbyterian exclusion or that the defenses must be based solely upon a clearly worded denial (see General Acc. Ins. Group v Cirucci, 46 NY2d 862 [1979]). Thus, unless provided for in a timely denial, payments must be made except when the insurer could establish “a founded belief’ that the injuries were not sustained in a covered motor vehicle accident (see Central Gen. Hosp. v Chubb, supra at 199).
In reaction to what the Superintendent of Insurance perceived, and is unfortunately well documented, as a deluge of
*832 fraudulent claims, both as to fraud in the accident and as to the care rendered, amended regulations were promulgated placing increased restrictions on claimants and lessening the burden on insurers by broadening the acceptable reasons to deny claims and strengthening insurers’ muscle in investigating claims. The Court of Appeals unanimously held that Regulation 68 (11 NYCRR part 65), although manifestly altering the way claims are processed, was well within the lawful authority of the Superintendent of Insurance (Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854 [2003]). Regulation 68, among other subsequent amendments, incorporated in the endorsement portion of the regulations the right of the insurer to request that the claimant or insured be subject to an examination under oath (11 NYCRR subpart 65-3) and, significantly, Regulation 68-C, promulgated outside of the policy endorsement, provides that “[a] provider of health care services is not eligible for reimbursement under section 5102 (a) (1) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement” (11 NYCRR 65-3.16 [a] [12]). In upholding the amended regulations, the Court of Appeals noted:
“Between 1992 and 2001, reports of suspected automobile insurance fraud increased by 275% the bulk of the increase occurring in no-fault insurance fraud. Reports of no-fault fraud rose from 489 cases in 1992 to 9,191 in 2000, a rise of more than 1700% ... By one estimate, the combined effect of no-fault insurance fraud has been an increase over $100 per year in annual insurance premium costs for the average New York motorist.” (Serio, supra at 861.)[1]
Prior to the promulgation of these amended regulations and the ensuing decision in Serio, State Farm Mutual Automobile Insurance Company commenced an action in Federal District Court (State Farm Mut. Auto. Ins. Co. v Mallela, 175 F Supp 2d 401 [ED NY 2001] [Mallela 7]) seeking a declaratory judgment that it is not required to reimburse providers who have “willfully evaded New York Law prohibiting [nonlicensed providers] from sharing ownership in [professional] corporations” (Mallela III at 319). After dismissal of that action and the promulgation of the new regulations, a second case was commenced — Mallela
*833 II. (State Farm Mut. Auto. Ins. Co. v Mallela, 2002 WL 31946762, 2002 US Dist LEXIS 25187 [ED NY 2002].) In Mallela II, on a motion to dismiss, Judge Sifton found that the amended regulations effective April 2002 were “unlike” the old regulations in that “[a] provider of health care services is not eligible for reimbursement under section 5102 (a) (1) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such service in New York.” (Mallela II, 2002 WL 3194762, *4, 2002 US Dist LEXIS 25187, *14, quoting 11 NYCRR 65-3.16 [a] [12].) Further, the court noted that the Department of Insurance viewed these regulations as a clarification rather than a new requirement. As the no-fault claims arose under the old regulations, Judge Sifton did not disturb an earlier ruling and concluded that “an insurer may not refuse to pay a benefits claim based upon an allegation that the provider has a true owner . . . who does not possess a license to practice medicine” (Mallela II, 2002 WL 3194672, *11, 2002 US Dist LEXIS 25187, *38). Significantly, the District Court made no distinction as to whether the claims fell under the old regulations or new ones. In finding State Farm’s argument wanting with respect to the amended regulations cited above, Judge Sifton stated: “I am reluctant to undermine the legislative goal of speedy payment in order to permit insurers such as plaintiff to avoid paying licensed medical service providers for medically necessary services provided to insured individuals by licensed physicians.” (Id.)
The Court of Appeals of the State of New York had no such reluctance when responding affirmatively to the certified question posited by the Second Circuit, that is, whether
“ ‘a medical corporation that was fraudulently incorporated under N.Y. Business Corporation Law §§ 1507, 1508, and N.Y. Education Law § 6507 (4) (c) [is] entitled to be reimbursed by insurers, under New York Insurance Law §§ 5101 et seq., and its implementing regulations, for medical services rendered by licensed medical practitioners’ . . .
“We accepted the certification and now answer that such corporations are not entitled to reimbursement.” (Mallela III, supra at 320.)
, .Judge Rosenblatt unequivocally tempered the legislative imperative of a speedy claims process underpinning the earlier Court of Appeals’ pronouncements and Judge Sifton’s dismissal *834 by specifically holding that “on the strength of this regulation, carriers may look beyond the face of licensing documents to identify willful and material failure to abide by state and local law.” (Mallela III, supra at 321.)
Defendant herein argues that Mallela III informs the current litigation, that is, claims made prior to the promulgation of section 65-3.16 (a) (12), irrespective of the reason for the denial or whether such reason is the basis of a timely denial, are nonetheless subject to this policy choice.
The court concurs. The Court of Appeals makes no such distinction, even as the decision has, at its foundation, the new regulation, effective April 4, 2002. Given the procedural posture of the no-fault claims in question in the federal litigation, specifically claims that matured prior to the effective date of the “new” regulations, to read the Mallela III decision as only pertaining to claims maturing post-April 4, 2002 is simply illogical and would negate New York’s highest court’s finding, to wit: “The Superintendent’s regulation allowing carriers to withhold reimbursement from fraudulently licensed medical corporations governs this case.” (Mallella III at 321.)
Contrast the Court of Appeals’ consideration of the second question, that is, “whether, if the fraudulent corporations were not entitled to reimbursement, [could State Farm] recover money already paid out under theories of fraud or unjust enrichment,” and the Court’s answer to that question: “[N]o cause of action for fraud or unjust enrichment would lie for any payments made by the carriers before that regulation’s effective date” (Mallela III, supra at 322 [emphasis added]).
Again, the court notes that all the claims, which are the subject of the federal litigation, ripened before the effective date of the new regulation, and yet, the only distinction that the Court of Appeals has made is whether payment was made before or after the effective date.[2] Significantly, the Court of Appeals declined to make a specific finding in this matter as the complaint was unclear as to whether State Farm “has paid *835 money to [providers] after the amended regulation took effect.” (Id. [emphasis added].)
Thus, the court finds that 11 NYCRR 65-3.16 (a) (12) applies to the subject actions. “ [Resolution of the critical issues turns on identification and balancing of fundamental components of public policy” (Murphy v American Home Prods. Corp., 58 NY2d 293, 305 n 2 [1983]). In a departure from previous precedent, the Mallela III court placed protection against fraud squarely ahead of speedy resolution of no-fault provider claims. Before Mallela III, the courts in their haste to comply with the “fundamental components” of the legislative imperative behind the no-fault insurance statute failed to identify, let alone balance, competing policy imperatives. The New York Constitution provides that “[t]he protection and promotion of the health of the inhabitants of the state are matters of public concern.” (NY Const, art XVII, § 3.) Illustrative of this important public policy is a decision of the Appellate Division, Third Department, which, in upholding a differential tax code for professional corporations, found that “[professionals are subject to stricter State supervision and licensing requirements, in order to maintain standards of responsibility for the protection of the public.” (Matter of Manganaro v Tully, 88 AD2d 206, 209 [3d Dept 1982].) Corporations formed specifically to defraud the public and abuse the public trust must not be allowed to reap windfall profits, even in the face of competing compelling public policy.
However, that is not the end of the inquiry as the carriers must “demonstrate behavior tantamount to fraud” (Mallela III at 322) and not merely technical violations (e.g., late filings). Fraud in the incorporation now joins the long-standing Chubb defenses which withstand exclusion.
The court further holds that the defense is effective only if the insurer initially can show by “fact or founded belief” fraud in the incorporation and, therefore, no reimbursement would be mandated. Defendant herein has articulated a “founded belief” that the health providers, all incorporated by Dr. Rabiner and all subject to a management agreement with nonlicensed professionals, have violated both New York’s Business Corporation Law and Education Law.

. As recently as April 25, 2005, the Court of Appeals chose to use these statistics and their import — abuse of the entire no-fault insurance scheme — in reiterating the tests courts should employ to determine “which [claims] may proceed in court” in personal injury cases arising from motor vehicle accidents under no-fault. (Pommells v Perez, 4 NY3d 566, 571 [2005].)

. Plaintiff herein argues that the court may not impose the new regulations upon claims that arose subject to the “old regulations” (e.g., accidents occurring under a policy that existed prior to April 5, 2002), citing recent decisions on the lack of retroactivity of other “new regulations” such as the requirements of examinations under oath (EUO). That argument is misplaced. The EUO provision is part of the endorsement of the insurance policy (Regulation 68-A) and clearly, when determining the rights and obligations, one must look to the policy endorsement then in effect. (Star Med. Servs. P.C. v Eagle Ins. Co., 6 Misc 3d 56 [App Term, 2d & 11th Jud Dists 2004].) However, the *835 regulation which is the subject of this litigation is not part of the policy endorsement and therefore is not subject to the same restriction.