OPINION OF THE COURT
Peter P. Sweeney, J.
The within motions and cross motions are decided as follows:
The various motions and cross motions herein were argued before the court on August 17, 2006. The motions and cross motions concern discovery in thousands of actions to recover first-party no-fault benefits which involve millions of dollars in disputed claims. The plaintiff in all of the actions is Andrew Carothers, M.D., PC. The defendant insurance companies brought the motions seeking, inter alia, orders compelling Dr. Andrew Carothers, plaintiffs sole shareholder, to appear for examinations before trial (EBTs) on the issue of whether the plaintiff corporation, Andrew Carothers, M.D., P.C., was fraudulently incorporated within the meaning of State Farm Mut. Auto. Ins. Co. v Mallela (4 NY3d 313, 320-321 [2005]).[1] Plaintiff opposes the motions and cross-moves for protective orders against the various moving defendants maintaining, inter alia, that defendants are not entitled to discovery on the issue of fraudulent incorporation because they have not shown “good *972 cause” for an EBT by demonstrating “behavior [on plaintiffs part] tantamount to fraud.” Plaintiff contends that under Mallela, this is what must be shown for an insurer to obtain such discovery. The motions and cross motions herein are hereby joined for disposition.
Discussion
The court disagrees with plaintiffs contention that Mallela requires an insurer to show “good cause” by demonstrating “behavior [on a medical provider’s part] tantamount to fraud” before it can obtain discovery on the issue of fraudulent incorporation. The Mallela court, referring specifically to 11 NYCRR 65-3.2 (c), stated that the Superintendent’s regulations “demand that carriers delay the payment of claims to pursue investigations solely for good cause” (Mallela, 4 NY3d at 322 [emphasis added]). The Court went on to state that “[i]n the licensing context, carriers will be unable to show ‘good caused unless they can demonstrate behavior tantamount to fraud” (id.).
11 NYCRR 65-3.2 (c) prohibits insurers from demanding “verification of facts unless there are good reasons to do so” and requires that any request for “verification of facts” be made “as expeditiously as possible.” (Emphasis added.) There is no language in the regulation indicating that its purpose is to govern discovery once actions on disputed claims have been commenced. Indeed, 11 NYCRR 65-3.2 (c) is contained in a regulation entitled “[c]laim practice principles to be followed by all insurers.” It is apparent to this court that the investigations the Court was discussing in Mallela are those conducted by insurers during the claims process in accordance with their entitlement under the regulatory scheme to seek verification of claims (11 NYCRR part 65)[2] and not those conducted by litigants during the discovery process. While the Superintendent is certainly empowered to regulate investigations of claims, it is the Legislature, through the statutory pronouncements contained in article 31 of the CPLR, that regulates discovery in actions before this court (CCA 1101 [a]). The disclosure provisions contained in article 31 of the CPLR simply do not condition *973 discovery on a showing of “good cause”[3] and if plaintiffs construction of Mallela is adopted, it would necessarily mean that 11 NYCRR 65-3.2 (c) overrides these statutory provisions. It is unfathomable that the Mallela court would have intended this result.
Further, the entire discussion in Mallela concerning “good cause” can only be viewed as nonbinding dicta. The only question the Mallela court agreed to answer was whether “ ‘a medical corporation that was fraudulently incorporated under N.Y. Business Corporation Law §§ 1507, 1508, and N.Y. Education Law § 6507(4)(c) [is] entitled to be reimbursed by insurers, under New York Insurance Law §§ 5101 et seq., and its implementing regulations, for medical services rendered by licensed medical practitioners’ (372 F3d 500, 510 [2004])” (Mallela, 4 NY3d at 320).
The court also disagrees with plaintiff’s contention that there are special rules of discovery that apply to no-fault actions. The permissible scope of discovery in a no-fault action, as in any other action commenced in this court, is governed by “[t]he procedures set forth in the CPLR relative to disclosure” (CCA 1101 [a]). The disclosure provisions in the CPLR that pertain to actions are contained in article 31, whose guiding principle is that there shall be “full disclosure of all matter material and necessary in the prosecution or defense of an action” (CPLR 3101 [a]). The words material and necessary “are ... to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason” (Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406 [1968]).
This is not to say that the realities attendant to no-fault litigation should not be considered by the court in determining the scope of proper discovery in a particular case. The court is quite aware that the amount in dispute in a typical no-fault action is relatively small. While the disclosure provisions of the CPLR are ordinarily to be construed liberally, “the scope of permissible discovery is not entirely unlimited and the trial court is invested with broad discretion to supervise discovery and to *974 determine what is ‘material and necessary’ as that phrase is used in CPLR 3101 (a)” (NBT Bancorp v Fleet/Norstar Fin. Group, 192 AD2d 1032, 1033 [1993]; Allen v Crowell-Collier Publ. Co., 21 NY2d 403 [1968]; see also Vasile v Chisena, 272 AD2d 610 [2d Dept 2000]). “[D]iscovery determinations are discretionary; each request must be evaluated on a case-by-case basis with due regard for the strong policy supporting open disclosure” (Andon v 302-304 Mott St. Assoc., 94 NY2d 740, 747 [2000]), and, in determining which discovery devices should be available to a litigant in a particular case, “[a] sensitive balance must be struck between the intrusiveness of the discovery device and the merits, or lack thereof, of the claim” (Greater N.Y. Mut. Ins. Co. v Lancer Ins. Co., 203 AD2d 515, 517 [2d Dept 1994]).
The primary tool used by the court to control and supervise the scope of discovery in particular actions is the protective order. It is this tool, not the formulation of special rules, that should be used to regulate discovery in no-fault actions. CPLR 3103 (a) provides that “[t]he court may at any time on its own initiative, or on motion of any party or of any person from whom discovery is sought, make a protective order denying, limiting, conditioning or regulating the use of any disclosure device. Such order shall be designed to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts.”
The regulation of the terms and provisions of disclosure so as to prevent abuse through the issuance of a protective order under CPLR 3103 is generally left to the sound discretion of the trial court (see, Matter of U. S. Pioneer Elecs. Corp. [Nikko Elec. Corp. of Am.], 47 NY2d 914, 916 [1979]; see also Pedone v Schlotman, 249 AD2d 526, 526 [2d Dept 1998]; Nitz v Prudential-Bache Sec., 102 AD2d 914, 915 [3d Dept 1984]). Certainly, the issuance of a protective order in a no-fault action is appropriate to curtail discovery “where it may become an unreasonable annoyance and tend[s] to harass and overburden the other party” (Conrad v Park, 204 AD2d 1011, 1012 [1994]; Dempski v State Farm Mut. Auto. Ins. Co., 249 AD2d 895, 896 [4th Dept 1998]) or to prevent the proverbial “fishing expedition” (Auerbach v Klein, 30 AD3d 451, 452 [2d Dept 2006]; Latture v Smith, 304 AD2d 534, 536 [2d Dept 2003]).
Protective orders should also be freely issued to limit discovery in no-fault actions where the amount in dispute is small. As noted by Professor Patrick M. Connors in McKinney’s *975 Practice Commentaries to CPLR 3103, “To allow disclosure when its expense would render a victory on the merits a Pyrrhic one would violate both the spirit of Article 31 and the letter of CPLR 3103(a)” (Connors, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3103:6, at 561). Professor Connors posits that “[w]henever the sum involved on the merits of the case is small and the relative expense of disclosure high, the court should not hesitate to exercise its protective powers under CPLR 3103(a). At best, the disclosure should be limited to the least expensive and time-consuming devices” (id..).
While the court agrees that this approach is suited for the vast majority of no-fault actions, discovery determinations in any particular action must be made based on the action’s own attendant circumstances and left to the court’s sound discretion (see, Provident Life & Cas. Ins. Co. v Brittenham, 284 AD2d 518, 518 [2d Dept 2001]; DeSilva v Rosenberg, 261 AD2d 503 [2d Dept 1999]). Discretion is the guide.
Applying the above principles to the motions and cross motions before the court, the court finds that defendants should be permitted to conduct a joint EBT of Dr. Carothers on issues relative to fraudulent incorporation within the meaning of Mallela. Dr. Carothers appears to be the best witness, if not the only witness in plaintiffs employ, who can provide information relative to these issues. The defense of fraudulent incorporation is a complete defense to a claim for no-fault benefits, one that is not subject to the rules of preclusion (see A.B. Med. Servs. PLLC v Prudential Prop. & Cas. Ins. Co., 11 Misc 3d 137[A], 2006 NY Slip Op 50504[U] [App Term, 2d & 11th Jud Dists 2006]). Accordingly, discovery on the issue of fraudulent incorporation is “material and necessary” within the meaning of CPLR 3101 (a). Indeed, the Supreme Court, Appellate Term, for the judicial district in which this court sits, has so held on numerous occasions (see Midborough Acupuncture P.C. v State Farm Ins. Co., 13 Misc 3d 58 [App Term, 2d & 11th Jud Dists 2006];[4] Lexington Acupuncture, P.C. v State Farm Ins. Co., 12 Misc 3d 90 [App Term, 2d Dept 2006]; Valley Physical Medicine & Rehabilitation v New York Cent. Mut. Ins. Co., 193 *976 Misc 2d 675, 676 [App Term, 2d Dept 2002];[5] see also A.B. Med. Servs. PLLC v Utica Mut. Ins. Co., 11 Misc 3d 71, 74 [App Term, 2d Dept 2006]; Fair Price Med. Supply Corp. v ELRAC Inc., 12 Misc 3d 119 [App Term, 2d Dept 2006]; but see Statewide Med. Acupuncture, P.C. v Travelers Ins. Co., 12 Misc 3d 146[A], 2006 NY Slip Op 51515[U] [App Term, 1st Dept 2006] [suggesting that discovery demands concerning fraudulent incorporation are palpably improper unless “good cause” is shown]).
Certainly, an examination of Dr. Carothers will assist defendants in preparing for trial by sharpening the issues, and since the court is directing a joint examination of Dr. Carothers that will cover thousands of cases involving millions of dollars (see infra), the expense of the examination is of little concern. The court does not view such an examination as an unreasonable annoyance to the plaintiff, nor does the court believe that defendants’ purpose is to harass or overburden the plaintiff.
Finally, defendants have sufficiently demonstrated that they are not on a fishing expedition. Defendants’ submissions established that the three MRI facilities operated by Andrew Carothers, M.D., EC., were previously operated by three separate corporations whose sole shareholder was Dr. Robert Scott Schepp. Each facility was operated in essentially the same manner. Each of the Schepp corporations had entered into contracts with management companies whose principal was an individual by the name of Mr. Hillel Sher. These management companies ran much of the day-to-day business affairs of the facilities.
There have been two judicial determinations that one of the Schepp corporations was fraudulently incorporated within the meaning of Mallela (Boston Post Rd. Med. Imaging, P.C. v Progressive Ins. Co., Nassau Dist Ct, Apr. 5, 2006, Gianelli, J., Index No. 29453/05; Boston Post Rd. Med. Imaging, P.C. v Progressive Ins. Co., Nassau Dist Ct, Apr. 5, 2006, Gianelli, J., Index No. 29452/05). The underpinning of these determinations was that the facility was actually operated by laypeople, particularly Mr. Sher, in violation of Business Corporation Law § 1503 (b).
“[i]n light of the Insurance Law’s requirement that insurers enact fraud prevention plans (Insurance Law § 409), and the New York State Department of Insurance’s opinion letters urging insurers to be more vigilant about potential fraud, discovery requests pertaining to plaintiff’s license status and corporate structure, which are related to allegations of fraudulent billing, are proper discovery subjects.” (193 Misc 2d at 676.)
*977 Mr. Sher appears to be still involved, with the three MRI facilities which are now operated by the plaintiff. Defendants’ submissions included a UCC filing showing that Mr. Sher gave a security interest in all his personal assets “whether now owned or in the future acquired” to a company by the name of MedTRX LLC to secure loans made by MedTRX to Andrew Carothers, M.D., EC. Suspiciously absent from plaintiffs submissions in support of its own cross motions for protective orders or in opposition to the defendants’ motions is any attempt to demonstrate a divestiture by Mr. Sher of his interest in the three facilities. Indeed, plaintiff’s papers fail to provide any significant detail as to how Andrew Carothers, M.D., EC. came into possession of these facilities. Certainly, an EBT of Dr. Carothers is needed to ferret out if there has been any genuine change in how the facilities operate. Dr. Carothers appears to be the only person in plaintiffs employ who can shed light on these matters.
For all of the above reasons, it is hereby ordered that there shall be a joint trial of all actions pending in Civil Court, Richmond County, which are not presently on the trial calendar and which involve Andrew Carothers, M.D., EC., as plaintiff and defendant insurance carriers represented by the defense counsel herein (including, inter alia, the following carriers and affiliates thereof: Allstate, American Independent, American Transit, Ameriprise, Auto One, Bankers and Shippers, Bankers Independent, Bristol West, Cendant, Clarendon National, Coast National, Eveready, Farm Family, GMAC, Great American, Hanover, Hertz, Infinity, Integon, Lancer, Met Life Auto & Home, National General, Nationwide, New York Central Mutual, North American Risk Services, One Beacon, Ealisades, Erogressive, Response, State Farm, Statewide, Titan, Union Canadienne, Utica, Vermont Mutual, and Victoria). All actions in which there is a pending motion to strike the matter from the trial calendar as of the date of this order shall also be included in the joint trial. The joint trial shall be solely limited to the issue of whether plaintiff was fraudulently incorporated within the meaning of State Farm Mut. Auto. Ins. Co. v Mallela (4 NY3d 313 [2005]). There shall be joint discovery in these actions on all Mallela-related issues. All proceedings in the within actions, other than those specified herein, are stayed pending a resolution of whether Andrew Carothers, M.D., EC. was fraudulently incorporated within the meaning of Mallela, except that the parties may proceed with joint nonparty discovery in *978 the within actions on the Mallela-related issues as they see fit and may proceed with discovery in each individual action on issues other than Mallela-related issues; it is further ordered that the various motions by the defendants are granted to the extent that plaintiff is directed to produce Dr. Andew Carothers for an EBT limited to the issues implicated by Mallela, including but not limited to the corporate structure of the plaintiff professional corporation, the involvement of Dr. Carothers in the management of same, the involvement of Hillel Sher in the management of the plaintiff professional corporation and the involvement of the MedTRX entities in the sharing of plaintiffs profits. The EBT shall cover all actions that have been consolidated for joint trial, but only to the extent said Mallelarelated issues are involved; it is further ordered that the EBT of Dr. Andrew Carothers shall take place within 60 days of the date of this order at a time and place to be agreed upon. If the parties cannot agree on a time and place for the examination within 15 days of the date of this order, they are to immediately notify the court, at which time the court will direct the time and place of the examination. The examination shall continue day to day until completed; it is further ordered that the examination will be overseen by George Sacco, Esq., court-appointed referee, who is to be paid at a rate of $120 per hour, such payment to be shared equally amongst the parties. Each defense counsel may have only one attorney question the witness and there is to be no repetition of questions by defendants’ attorneys, except that subsequent questioning may properly seek to delve further into areas implicated by prior questions; it is further ordered that plaintiffs cross motions to the extent they seek protective orders precluding defendants from taking Dr. Carothers’s EBT are denied to the extent indicated herein. Defendants’ motions and plaintiff’s cross motions are in all other respects denied, without prejudice and with leave to renew following the service of additional discovery demands as discussed in this order; it is further ordered that further Mallelarelated discovery between the parties sought as a result of the EBT of Dr. Carothers (other than nonparty discovery) must be requested by defendants in a joint demand served upon plaintiff within 15 days of the completion of said examination. Plaintiff is directed to either comply with or object to the items contained in any such demand within 20 days of its service. The court will consider a motion to compel compliance with any aspect of the demand that has not been complied with, provided it is served *979 within 20 days of service of plaintiff’s response; it is further ordered that all Mallela-related discovery must be completed within 150 days of the date of this order. Any party wishing to file a motion for summary judgment relative to any Mallelarelated issue must do so within 30 days of the discovery cutoff date. Any opposition papers or cross motions must be served within 20 days of service of any such motion. All other papers in connection with any motion or cross motion are to be served within the time frames set forth in the CPLR; it is further ordered if summary judgment is granted to plaintiff dismissing defendants’ MaZZeZo-related defenses, the stay imposed by this order shall be immediately lifted. If it is determined that triable issues of fact exist as to the merits of defendants’ Mallelarelated defenses, the joint trial called for in this order shall be held as soon as is reasonably practicable; it is further ordered that defendants are to file a notice of trial in conformity with this order within 10 days of the discovery cutoff date; and it is further ordered that if the joint trial called for in this order proceeds and results in a finding in plaintiffs favor, the stay imposed by this order shall be immediately lifted.

. In Mallela, the New York Court of Appeals held that a medical corporation that was fraudulently incorporated under Business Corporation Law §§ 1507, 1508 and Education Law § 6507 (4) (c) is not entitled to he reimbursed by insurers, under Insurance Law § 5101 et seq. and its implementing regulations, for medical services rendered by licensed medical practitioners (Mallela, 4 NY3d at 320). The Court reasoned that Insurance Regulations (11 NYCRR) § 65-3.16 (a) (12) excluded from the meaning of “basic economic loss” payments made to unlicensed or fraudulently licensed providers and thus rendered such providers ineligible for reimbursement (id.). The Court went on to state that on the strength of 11 NYCRR 65-3.16 (a) (12) “carriers may look beyond the face of licensing documents to identify willful and material failure to abide by state and local law” (id. at 321).

. 11 NYCRR 65-3.5 (b), in pertinent part, provides: “Subsequent to the receipt of one or more of the completed verification forms, any additional verification required by the insurer to establish proof of claim shall be requested within 15 business days of receipt of the prescribed verification forms.”

. The court is not suggesting that “good cause” is not a factor that might be considered in determining the permissible scope of discovery in an action to recover first-party no-fault benefits. It is simply not a mandatory prerequisite to discovery.

. “We find that defendant’s papers establish that so much of defendant’s discovery requests as seek information regarding whether plaintiff was fraudulently incorporated are material and necessary (see CPLR 3101)” (Midborough Acupuncture P.C., 13 Misc 3d at 60).

. In Valley Physical Medicine & Rehabilitation v New York Cent. Mut. Ins. Co., the court stated that