OPINION OF THE COURT
David Goodsell, J.
*510 Plaintiff, A.B. Medical Services PLLC, moves for summary judgment to recover first-party no-fault benefits as assignee of the rights of Frantz Beauliere who received medical treatment from the plaintiff. Defendant cross-moves for dismissal of the action pursuant to CPLR 3211 or alternatively precluding evidence from being offered at trial under CPLR 3126 or compelling discovery pursuant to CPLR 3124.
The plaintiff provided treatment to the patient-assignor between December 18, 2003 and January 8, 2004. On June 15, 2006, Dr. Alexander Braver, sole member of the plaintiff, pleaded guilty to one count of attempted grand larceny in the third degree, a felony, and was sentenced to three years’ probation on October 19, 2006 and was ordered to make restitution of $28,000 for fraud in Medicaid overbilling claims. On January 26, 2007, Dr. Braver was suspended from the practice of medicine by the New York State Board for Professional Medical Conduct effective March 3, 2007.* On August 14, 2007 plaintiff commenced an action to recover first-party no-fault benefits rendered on behalf of assignor Frantz Beauliere who was injured in a motor vehicle accident.
The defendant submits and the plaintiff admits that A.B. Medical Services PLLC is a domestic professional service limited liability company which formed on December 8, 1999 and whose sole listed member and manager is Dr. Alexander Braver.
Defendant contends that the suspension of Dr. Braver renders A.B. Medical Services PLLC a fraudulently formed entity in accordance with State Farm Mut. Auto. Ins. Co. v Mallela (4 NY3d 313 [2005]). Plaintiff contends that the entity having validly existed prior to the suspension of Dr. Braver may now collect such fees as legally earned prior to the suspension of the doctor.
The Court in Mallela answered the limited certified question from the Second Circuit Court of Appeals that New York no-fault insurance laws allow that insurance carriers may withhold payment for medical services provided by fraudulently incorporated enterprises to which patients have assigned claims. (Mallela at 319.) The holding of Mallela specifically deals with a *511 professional corporation fraudulently licensed at the time of formation by naming nonparticipating physicians as shareholders while nonphysicians actually operated the entities and captured the profits of the business through inflated management fees. Mallela involved a provider which was a professional service corporation under Business Corporation Law article 15. However, given the requirements of membership, professional licensing and filing are substantially the same with professional service limited liability companies; the underlying insurance regulations set forth in 11 NYCRR 65-3.16 (a) (12) apply to PLLC’s as well. (Multiquest, P.L.L.C. v Allstate Ins. Co., 17 Misc 3d 37 [App Term, 2d & 11th Jud Dists 2007].) Insurance Department Regulations (11 NYCRR) § 65-3.16 (a) (12) provides in part: “A provider of health care services is not eligible for reimbursement under Section 5102(a)(1) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such service in New York.”
The provision set forth in 11 NYCRR 65-3.16 (a) (12) bars payment to a fraudulently formed entity regardless of whether the services it performed occurred before or after April 2, 2002, the effective date of the regulation. (Multiquest, P.L.L.C. v Allstate, supra; Metroscan Imaging, P.C. v GEICO Ins. Co., 13 Misc 3d 35 [App Term, 2d & 11th Jud Dists 2006].) The proper licensing of the provider is a condition precedent to payment. (Valley Physical Medicine & Rehabilitation v New York Cent. Mut. Ins. Co., 193 Misc 2d 675 [App Term, 2d Dept 2002]; Metroscan Imaging, P.C. v GEICO Ins. Co., supra; Multiquest, PLLC v Allstate Ins. Co., 9 Misc 3d 1031 [Civ Ct, Queens County 2005].)
A distinction must be drawn between the terms “licensed” and “formed.” While physicians within professional service corporations and limited liability companies are licensed in accordance with Education Law § 6522, corporations and limited liability companies are incorporated, organized or formed in accordance with Business Corporation Law § 1503 and Limited Liability Company Law § 1203. A professional service limited liability company may only practice medicine by “individuals authorized by law to render such professional service, as individuals.” (Limited Liability Company Law § 1204 [a].)
Notwithstanding the notion that a professional service limited liability company only practices medicine through individuals, Limited Liability Company Law § 1203 (d) subjects a PLLC to the supervision of the Regents of the University of the State of *512 New York. Further, the Regents are empowered to subject the entity to disciplinary proceedings and penalties by suspending, revoking or annulling, for cause, the articles of organization of the PLLC. In the present case, no evidence has been presented that the professional service limited liability company A.B. Medical Services PLLC has been subjected to disciplinary proceedings, or been subjected to any licensing sanctions. Further, the suspension of Dr. Braver involved medical services rendered by Dr. Braver which resulted in overbilling Medicaid patients, not no-fault cases.
Therefore, the question presented is whether the suspension of the license of the sole member/manager of a professional service limited liability company renders the existence of the entity to be fraudulent under the holding of Mallela (supra), and to violate Insurance Law § 5102 (a) (1) and 11 NYCRR 65-3.16 (a) (12), thereby precluding reimbursement for services rendered.
The effect of a suspension subsequent to the formation of an entity has been discussed only in a limited manner. The court in CKC Chiropractic v Republic W. Ins. Co. (5 Misc 3d 492 [Civ Ct, Queens County 2004]) concluded, based upon contract law and by analogy to cases which allowed disbarred attorneys to collect presuspension fees, that a health care provider who is not registered with New York State may collect professional fees earned prior to the suspension of the health care provider. However, the court in CKC Chiropractic fails to indicate whether the plaintiff was a professional corporation, PLLC or an individual “doing business as” an entity.
The distinction of the entity is significant. Limited Liability Company Law §§ 1209 and 1210 provide for a situation in which a member is disqualified from the practice of medicine. Under section 1209 a physician legally disqualified from the practice of medicine
“shall sever all employment with and financial interests (other than interests as a creditor or vested rights under a bona fide retirement program) in such limited liability company forthwith or as otherwise provided in section [1210] of this article . . . Such legal disqualification . . . shall be deemed to constitute an irrevocable offer by the disqualified member to sell his, her or its membership interest to the professional service limited liability company, pursuant to the provisions of section [1210] of this article.”
*513 The failure to enforce the disqualification process described in the statute is grounds for dissolution of the entity.
Limited Liability Company Law § 1210 requires the sale of membership interests by a disqualified member within six months after the disqualification. The statute provides for a means to immediately value the company in the event of a repurchase of the interest by the entity in the event the operating agreement fails to do so. However, the failure to sell the interests provides no penalties to the disqualified member where there are no other members to effectuate a buyout since the only penalty is to award attorney’s fees and costs to the buyer for the seller delaying such a sale. Additionally, the statute permits a sale within the six-month window to a qualified third-party purchaser again subject to the operating agreement. However, as noted above, the failure of the member to sever ties with the entity is grounds for dissolution. (Limited Liability Company Law § 1209.)
Section 1210 goes on to note that the provisions of the section do not prevent the company from paying pension benefits or other deferred compensation to a former member of the company.
The guidelines for dissolution are set forth in Limited Liability Company Law § 701 in accordance with section 1213 which governs professional service limited liability companies. The entity, since it is without members and since it has not taken steps to transfer ownership to a qualified member, must dissolve and wind up its affairs in accordance with article VII of the Limited Liability Company Law.
The facts established in this case do not support the defendant’s allegation that the entity is fraudulently formed as outlined in Mallela {supra). However, neither the plaintiff nor Dr. Braver offer any rationale for failing to adhere to the requirements of the Limited Liability Company Law. Dr. Braver raises, through an affidavit in opposition, that he is being persecuted by the insurance companies, but fails to offer any other defense to the defendant’s allegation of fraudulent formation. Dr. Braver had the opportunity to avail himself voluntarily of options to continue the entity through a valid transfer but failed to do so. Therefore, the plaintiff, while properly formed, in light of the suspension of its sole member is now required to dissolve and wind up its affairs. As such, it does not have standing to the continued maintenance of this action.
Clearly, Dr. Braver is not permitted to continue as a member of the entity. This however does not mean that Dr. Braver must *514 forfeit his rights to payment or that the potential debt of the defendant is erased. The entity is allowed, as part of winding up its affairs, to pursue claims (Limited Liability Company Law § 703 [b]). Dr. Braver, as a creditor of the entity, would be entitled to payments earned.
The action was commenced after the suspension of Dr. Braver, but before the expiration of the six-month period to take action on the disqualification. (Limited Liability Company Law § 1210.) Therefore, while the action was timely and properly commenced, the maintenance of the action without a qualified member in ownership of the entity must be considered a nullity. Even though the defendant failed to couch the application to dismiss on other than alleged fraudulent grounds, the plaintiff has not shown legal basis to maintain this action. Clearly, the plaintiff must satisfy the legal requirements in order to maintain its case and pursue causes of actions available.
In fashioning an appropriate remedy, which considers both the rights of the plaintiff to seek payment for services provided and the defendant which is entitled to a prompt adjudication of the matter, CPLR 2201 provides that a “court in which an action is pending may grant a stay of proceedings in a proper case, upon such terms as may be just.” In order to do so, in this case a stay pursuant to CPLR 2201 is granted sua sponte to allow for the filing of articles of dissolution and the appointment of a representative to wind up the affairs of the entity to allow final resolution of all matters including the present lawsuit. The stay shall suspend the accumulation of interest under 11 NYCRR 65-3.9 (a), should interest ultimately be awarded retroactive to the date issue was joined until lifting of the stay, since the plaintiff should not benefit from its failure to adhere to its statutory obligations under the Limited Liability Company Law (see Bank of N.Y. v Levy, 123 AD2d 589 [2d Dept 1986]; 1544-48 Props, v Maitre, 184 Misc 2d 984 [App Term, 2d Dept 2000]).
In the end, the form of business and the named party matter. Adherence to the laws governing the conduct of a business must be followed. Therefore, the motion of the plaintiff is denied without prejudice since no authority to prosecute the claim exists. The cross motion is denied as the defendants have failed to demonstrate a fraudulent formation of the prosecuting entity. The portion of the motion seeking preclusion is without support and is denied. The request for *515 discovery is denied in light of the decision rendered in this case. This case is stayed for a period not to exceed six months or until such time as an order from a court of competent jurisdiction appoints a proper party to file articles of dissolution and to wind up the affairs of the entity.

 While the determination and order of the State Board for Professional Medical Conduct dated January 26, 2007 provided the three-year suspension to be effective 30 days after the effective date of the order, Public Health Law § 230 (10) (h) provides the latest effective date to be presumptively seven days after the date of the order. Therefore, the 30th day after the seventh day for the mailing of the order would be March 3, 2007. No proof as to the actual dates of mailing were submitted on the motion; therefore the court applied the latest date under the statute.