OPINION OF THE COURT
Robert F. Julian, J.
*501 Relief Requested: CPLR article 78 proceeding brought by Universal Waste challenging the summary disposition by Department of Environmental Conservation (DEC) of its petition to delist a hazardous waste site.
Holding: The delisting petition set forth factual allegations, supported by evidence in admissible form, sufficient to entitle petitioners to a hearing pursuant to 6 NYCRR 375-1.9. DEC’S summary dismissal of the petition is vacated, and DEC is directed to convene a hearing pursuant to the cited regulation.
Discussion: Environmental Conservation Law § 27-1301 et seq., the New York State Superfund Law, establishes an environmental hazard response methodology that includes the identification of inactive hazardous waste sites, their classification depending upon immediacy of need of remediation, their listing in a registry, and the development of remediation plans.
Petitioners own an inactive hazardous waste site near the Mohawk River in Utica, New York. The premises have a long history with the respondent, extending back to at least 1977 when hazardous waste spillage was identified at the site. In July 2002, DEC reclassified the site. Petitioners ultimately filed a petition pursuant to 6 NYCRR 375-1.9 requesting a delisting or reclassification of the parcel to class 3. The property had been reclassified by DEC as a “class 2” property, which is an inactive hazardous waste disposal site that constitutes a significant threat to the environment. The petitioners argued that while the property did indeed contain hazardous wastes— principally PCB’s — the waste did not constitute a “significant threat” to the environment.
6 NYCRR 375-1.9 provides:
“(d) Not later than 45 days after receipt of a complete petition, the department shall either:
“(1) summarily determine whether or not to grant the relief asked for in the petition and inform the petitioner of its determination, with a statement of reasons therefor:
“(i) a petition will be summarily denied if the factual allegations made therein, even if accepted as true by the department, would be insufficient to support the grant of the relief sought or any other proper relief;
“(ii) a petition will be summarily granted if the factual allegations made therein, if accepted as true by the department, would be sufficient to support *502 the grant of the relief sought or any other proper relief, and the department accepts such allegations as true; or
“(2) decide that the petition cannot be summarily determined, and notify the petitioner, and all other persons who would be proper petitioners, of its intent to convene an adjudicatory hearing. A petition cannot be summarily determined if the factual allegations made therein, if accepted as true by the department, would be sufficient to support the grant of the relief sought or any other proper relief, but the department does not accept such allegations as true . . . .”
The Department summarily denied the petition, arguing that the facts set forth by the petitioners, even if true, would not justify any relief. The" petitioners now bring this article 78 proceeding, arguing that such action by the Department was arbitrary and capricious and must be vacated because the petitioners do set forth facts which, they say, justify the de- or reclassification requested. They argue that even if the facts shown are insufficient to require this court to reclassify the property (they are), they are sufficient to have required DEC to give petitioners a hearing pursuant to the regulation. On oral argument, petitioners substantially confined their position to their claim to a hearing. It is solely to the hearing issue this court will address itself, since the issue of reclassification is both beyond the jurisdiction of the court and unjustified by the facts.
The Department argues the following points of law (respondent’s mem of law at 26ff):*(1) petitioners must show that the determination was “arbitrary, capricious, [irrational], or affected by an error of law.” (Matter of Grossman v Rankin, 43 NY2d 493, 502 [1977]); (2) the proceeding is akin to a motion for summary judgment (Matter of Riela v Van Voris, 229 AD2d 94 [1997]); (3) petitioners must come forward with evidence supporting their factual allegations (Piela, id.; Matter of Malik v Berlinland, 158 AD2d 836 [1990]); (4) the court may not substitute its judgment for the Department’s, but must only determine whether the Department satisfied the requirements of (1) above (Flacke v Onondaga Landfill Sys., 69 NY2d 355 [1987]); and (5) the factual determinations of the Department, *503 within its area of expertise, must be accorded great weight and deference by the court (Flacke, supra).
The position of the Department, legally, is accurate as far as it goes but is ultimately misplaced. That is because the Department is subject to its own regulation, 6 NYCRR 375-1.9, which more specifically details how, in the present situation, the Department can lawfully arrive at conclusions which would indeed leave it relatively immune from article 78 scrutiny, and that is by providing hearings for petitioners who make a prima facie factual showing of entitlement to relief. 6 NYCRR 624.1 et seq. sets forth detailed procedures for such hearings, which are held before an administrative law judge who is in fact the Department Commissioner’s designee. (6 NYCRR 624.2 [b].) 6 NYCRR 624.13 sets forth the requirements for the final decision reached based on the hearing. It is the Commissioner’s decision; it is the Department’s decision. There can be no doubt but that a decision so reached would indeed be subject to the great deference owed to the Department’s determination. But the Department cannot lay claim to such deference with regard to the question of whether or not it complied with requirements imposed by its own procedural regulations, the implementation of which certainly presents legal questions for the court. In this case, the pertinent regulations require DEC to arrive at conclusions concerning the hazardous waste site listing process by way of a hearing in circumstances in which a petitioner makes a prima facie showing, based on facts, that the classification was incorrect.
The Department argues that the procedure in an article 78 is akin to a summary judgment motion (respondent’s mem at 26), and the court agrees and finds the analogy particularly appropriate in this circumstance. The function of a court on a motion for summary judgment is issue finding not issue determination (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404 [1957]; Wiener v Ga-Ro Die Cutting, 104 AD2d 331, 333 [1984], affd 65 NY2d 732 [1985]; Creighton v Milbauer, 191 AD2d 162, 166 [1993]). The court “must view the facts in a light most favorable to the [nonmoving party]” (Crosland v New York City Tr. Auth., 68 NY2d 165, 168 n 2 [1986]), “consistent with the rule that in opposing motions to dismiss for failure to state a cause of action and motions for summary judgment the plaintiff’s submissions must be accepted as true” (Ingle v Glamore Motor Sales, 73 NY2d 183, 194 [1989]). It is with these legal standards in mind that the court must assess the implica *504 tions, in this case, of the regulatory mandate that “[a] petition cannot be summarily determined if the factual allegations made therein, if accepted as true by the department, would be sufficient to support the grant of the relief sought or any other proper relief, but the department does not accept such allegations as true . . (6 NYCRR 375-1.9 [d] [2]).
The question, therefore, is not whether the Department’s determination to summarily reject the petition was based on a sufficient factual footing to be “reasonable” rather than “arbitrary and capricious,” but rather whether the petitioners set forth factual allegations (with supporting evidence) sufficient to compel the regulatorily required hearing. In that context, as well, the court’s role is similar to that in a summary judgment context, and if the court finds merely that there are issues of fact presented, then the hearing is required. The question of whether, at this stage, the Department’s action is rationally based is made irrelevant by the regulation, which in effect requires that the rationally based decision be made in the hearing context, not at the first administrative level, if there has been a proper allegation of facts that would support a grant of relief.
That the petitioner did set forth such facts is sufficiently established by the respondent’s own identification of the factual controversies which present themselves here. They are outlined on page 3ff of respondent’s reply memorandum of law. Here, the disputed claims of the respective experts are laid out. Respondent states that petitioners’ expert, Mr. Hineline, asserts that the groundwater under the site is not in fact contaminated with PCB’s (he claims that PCB contamination ends many feet above the groundwater table under the site) and that neither contaminated sediment nor water is escaping from the site. The petitioners allude to these facts and other findings to support its position that PCB’s are not leaching from the site, and, further, that the quantities of PCB’s found in the outfall channel and river in its vicinity are so low that any alleged migration of PCB’s is not materially affecting the river or biota therein, i.e., there is no “significant” impact. Respondent claims that groundwater testing does indeed establish the presence of PCB’s, that they were found at levels significantly deeper than claimed by petitioners, that petitioners failed to note the findings of their own crew of oily residue leaving the site, and that, in all these regards, the petitioners’ expert is incorrect. Respondent claims there is a “significant threat.” The respondent *505 refers to other compelling reasons to classify the site as a “significant threat”; most particularly, it points to the presence on the site, in the outfall channel, and in the river of PCB Aroclor 1254, suggesting migration from the site of this particular form of PCB’s.
Indeed, the respondent claims that there is really no dispute regarding “the facts,” but only regarding their significance. In some measure the dispute so framed reflects the systematically ambiguous way in which the term “fact” is used in the law. The presence of PCB’s of a particular Aroclor, in a specific concentration, in a specific location, is a scientific fact: scientifically demonstrable and true or false based on certain repeatable and objective findings. The alleged “fact” of PCB’s migration from the site to the river is a fact in the form of a scientific deduction. It is a conclusion allegedly derived consistent with scientific principles from the actually observable facts. Then there are legal facts, of which the existence of a “significant threat” to the environment is one. It is not a fact that can be based merely on repeatable and objective findings, or merely logical deductions therefrom, but on judgment and interpretation applied to such findings. Such conclusion laden facts are a thoroughly familiar species in the law; indeed, it is very often the job of a factfinder to determine just such legal facts. The parties in an auto collision case subject to the No-Fault Law may well have little disagreement on the objective medicine, but try the case to have a jury make the factual determination of whether the injuries shown constitute a “significant limitation of use of a body . . . system . . . [etc.]” (see Insurance Law § 5102 [d]). Similarly, they may well agree on the actions each driver took leading up to the accident, but disagree on whether or not the same constituted “negligence,” another legal fact to be found by a factfinder. There are proof-based disputes presented here involving scientific facts, scientific conclusions, and legal facts, all of which defeat summary disposition pursuant to the regulation.
The Department, noting that apparently there are no published decisions concerning delisting, appends two unpublished cases to its memorandum in support of its position. The excellently crafted decision in Pall v New York State Dept. of Envtl. Conservation (Sup Ct, Nassau County, May 25, 1998, Index No. 23617/97 [exhibit 4]) fully explains the law underlying the regulatory scheme at issue, and reviews and affirms the determination by the DEC to summarily dismiss a reclassifica *506 tion petition. But Pall is significant as well for what the petitioner therein, unlike the petitioner here, did not and could not do, which was to set forth factual allegations, in admissible form, sufficient to require relief if true. DEC claimed that Pall was a generator of hazardous wastes. Pall denied everything, but was unable to offer any facts in admissible form that, if true, would show DEC wrong. On the key point of whether there were higher levels of the chemicals TCE and PCE on the Pall site than upgradient from it, Pall’s own data showed the higher levels, thus defeating the claim that it did not add to the chemical load. While Pall had criticism of DEC’s study and theoretical arguments about how others might really be responsible, the decision sites no single scientific fact upon which Pall would be entitled to relief. That is very, very different from the case at bar. The second case, 89 Frost St. v New York State Dept. of Envtl. Conservation (Sup Ct, Nassau County, Dec. 15, 1998, Index No. 28408/97), does not review the facts sufficiently to know whether the petitioner there had any admissible factual moorings for its contentions. 89 Frost St. does, instructively, quote Town of Hempstead v Flacke (82 AD2d 183, 187-188 [1981]): “The commissioner’s determination is entitled to great weight, especially where, as here, it is in an area requiring specialized, scientific knowledge . . . .” But, of course, the administrative law judge’s decision is the Commissioner’s determination. That is a decision that can only come by way of a hearing. That would be a decision to which the court would have to grant great deference and make no attempt to substitute its uneducated judgment for that of the Commissioner’s designee, who presumably comes to the task with a fundamental understanding of the science sufficient to enable a knowledgeable sorting of the competing claims. However, the question of whether or not there merely exist fact based factual allegations which, if true, would require a hearing is most decisively a legal, not scientific, question, and one which this court is able and required to answer.
In the instant case, there is plainly sharp disagreement amongst the parties concerning disputed scientific facts and conclusions (like whether and where PCB’s are migrating) as well as legal facts (like whether the environmental threat posed by PCB’s on the petitioners’ site is “significant”). The petitioners set forth a voluminous factual basis for the claimed relief in the re-/declassification petition. The respondent provides the affidavit of an expert, Mr. Preddice, who cites a study which shows that “a backwater area, station 70, just east of Universal Waste, *507 had an uptake rate of 1032 ng/day,” two orders of magnitude greater in PCB’s than at other stations sampled. Mr. Preddice and DEC argue that such a finding is tantamount to circumstantial evidence of petitioners’ site causing the specific pollution referenced. Mr. Hineline, the petitioners’ expert affiant, prepared the very lengthy and detailed preliminary site assessment report that detailed the methodology employed, findings, and conclusions upon which he relies to make his factual averments. Exhibit 7 to the petition was Mr. Hineline’s additional supplemental PCB’s sampling summary report, purportedly further supporting the claims concerning nonmigration of PCB’s, and the insignificance of the quantities thereof. Hineline gives factual explanations and opinions as to why there are no plausible pathways from the petitioners’ cite to the river causing the pollution cited, including why the PCB’s would not move from the premises either in groundwater, or sediment transport, or through the storm sewer or the bedding of the storm sewer.
DEC offers the affidavit of John Swartout in refutation of Hineline’s argument. Swartout argues that: there are PCB’s at both surface and subsurface levels (scientific facts); the channel draining the site and the backwater area are highly contaminated with the same Aroclor of PCB’s, unlike any other location on the river as sampled by DEC (a scientific fact); and that DEC has identified the channel and backwater as a significant source of PCB’s flowing into the Mohawk River (a legal fact). Swartout says the petitioners, and Hineline, are “wrong” (If 38); he disputes the accuracy of their science and their results. A reason-based battle between experts is pathognomonic of an issue for a factfinder.
The presence of PCB’s — in the river, on the land — is not disputed, but their pathway to the river is, as is the mobility of the ones presently on the site. The petitioners cite scientific facts concerning the nature of PCB’s and the situation of this site to make a prima facie showing that there are legal facts to be determined by a factfinder. There is a question of fact, based upon competing scientific investigations, as to whether or not the legal conclusion that the petitioners’ site is a significant environmental threat so as to be listed as a class 2 site.
The existence of the regulation in issue changes the court’s focus from the ordinary inquiry under article 78 of whether the action of a state regulatory agency had some reasonable basis and was therefore neither “arbitrary and capricious” nor “contrary to law” but rather whether the agency has acted consis *508 tently with its own applicable regulation, for an agency acts arbitrarily and. capriciously if it fails to follow its own rules. (Matter of Era Steel Constr. Corp. v Egan, 145 AD2d 795, 799 [1988]; Law Enforcement Officers Union, Dist. Council 82, AFSCME, AFL-CIO v State of New York, 229 AD2d 286 [1997].) In this case, the regulatory agency has delineated standards and procedures that define how it is to respond to a delisting petition, including that it must provide a hearing if the petitioner raises factual allegations which, if true, would entitle it to relief. “Factual allegations” mean substantial, fact based, allegations, not merely frothy pleadings, language that would entitle anyone and everyone to a hearing.
The scientific facts set forth in the petition and other record materials establish that petitioners have provided sufficient, admissible factual support for their allegations to satisfy the regulatory criteria entitling them to a hearing. These allegations, if true, would entitle the petitioners to delisting or a modification of the classification to class 3. The court again underscores that it is not resolving issues, but is determining whether there are disputed facts and thus issues to resolve. Nor has the court determined which of the competing experts are correct. The court merely finds that admissible proof has been advanced by both parties, that upon such proof, viewed most advantageously to the petitioners, they have made a sufficient showing to avoid the drastic remedy of summary judgment, and, on that model, have therefore made a sufficient showing to be entitled to a hearing, rather than subject to a summary disposition.
Since there were sufficient facts set forth by petitioners in admissible form to raise a legitimate question of fact concerning the existence of a “significant threat,” the petitioners were entitled to a hearing to contest and establish that legal fact. If the factual submissions by these petitioners are insufficient to trigger the required hearing pursuant to the regulation, it is difficult to understand what type of showing would require such a hearing: it virtually seems from the respondent’s position that a showing requiring summary disposition in a petitioner’s favor would be the only showing sufficient to force it to provide a hearing, since it otherwise would have complete discretion to deny a hearing. The instant determination must therefore be set aside as contrary to the regulation, and the respondent is ordered to proceed with a hearing on the delisting petition consistent with 6 NYCRR 375-1.9 and 624.1 et seq.
*509 The court will retain primary jurisdiction over this matter and stay further proceedings but returns the matter to DEC so that it may resolve it in a manner consistent with its own procedures by having a hearing. The stay will remain in place until a hearing is completed and a determination rendered. (See Staatsburg Water Co. v Staatsburg Fire Dist., 72 NY2d 147 [1988]; Kranson v Madison-Oneida Bd. of Coop. Educ. Servs., 189 Misc 2d 815 [Sup Ct, Oneida County 2001]; Golden Hill Paugussett Tribe of Indians v Weicker, 39 F3d 51 [2d Cir 1994]; Wagner & Brown v ANR Pipeline Co., 837 F2d 199 [5th Cir 1988]; Coit Independence Joint Venture v Federal Sav. & Loan Ins. Corp., 489 US 561 [1989].)
The court further directs that a hearing officer be appointed and the hearing held within 90 days of the date of this decision consistent with 6 NYCRR 375-1.9 (d) (2) (i). The court further directs that the administrative law judge (ALJ) issue a determination of the matter in the manner and within the time limits set forth in 6 NYCRR 624.13, and that the said determination be supplied forthwith to this court, whereupon any further applications may be made and the parties will return before the court as soon as possible after the ALJ’s determination so that this petition may be finally disposed of.
The court concludes that the proper administration of justice requires the express imposition of the above time limits (which are in any event regulatory) given the facts of this case. The delay that has surrounded the assessment and remediation of this site is nothing short of mind boggling. DEC asserts that this site is contributing to the presence of PCB’s in the river, resulting in limitations on fishing and implied health risks. A DEC memorandum reveals the suspicion of pollution from this site as early as 1977. The site has been the subject of litigation since at least 1986, with apparently huge gaps between periods of activity concerning the site. DEC claims that a 1996 PISCES study found incriminatory PCB’s at twice the level in the river otherwise, just east of this site, causing DEC to conclude that this site is the source of pollution. Yet another six or so years went by before the site was listed by DEC as a proposed class 2 hazardous waste site. This site is either polluting the Mohawk River or it is not. A 20-year delay in reaching a determination of that essential question is unacceptable.

 Because the memoranda are referred to herein, all parties’ memoranda of law are hereby ordered to be made part of the record herein.