*569 OPINION OF THE COURT
Anna Culley, J.
In the case at bar, plaintiff, a medical services provider and assignee of claimant Malik Corbin, brings a motion for summary judgment seeking payment for several claims in the aggregate sum of $6,581.38. These claims arise out of medical services allegedly provided to Corbin as a result of an automobile accident which occurred on December 9, 2001, prior to the effective date of the new regulations (11 NYCRR 65-3.16 [a] [12] [eff Apr. 4, 2002]). In support of its motion, plaintiff submits the affidavit of the corporate officer, Aleksander Tverskoy, M.D., as well as the denial of claim forms (NF-10). The NF-10s are sufficient to adequately establish when the defendant received the bills in question (see A.B. Med. Servs. v New York Cent. Mut. Fire Ins. Co., 3 Misc 3d 136[A], 2004 NY Slip Op 50507[U] [App Term, 2d & 11th Jud Dists 2004]). Each of the denials state, in relevant part: “Your claim is denied because you have not provided the verification requested by State Farm’s Special Investigative Unit. If you provide the requested information, State Farm will reconsider its position.”
All of State Farm’s denial of claims are untimely on their face with the exception of one received September 11, 2002 in the amount $1,353.31. The denial is dated September 18, 2002. As has been held by the Appellate Term, Second and Eleventh Judicial Districts, a denial issued before all verification has been provided is not a proper denial, and therefore, defendant insurance carrier has failed to properly deny this claim (11 NYCRR 65-3.8 [b] [3]; see also Shtarkman v Allstate Ins. Co., 8 Misc 3d 129[A], 2005 NY Slip Op 51028[U] [App Term, 2d & 11th Jud Dists 2005]). Accordingly, it appears plaintiff has established its prima facie entitlement to summary judgment as a matter of law.
In this action, defendant cross-moves seeking summary judgment alleging that the plaintiff is not a properly licensed medical corporation as it is not wholly owned by licensed medical doctors. Defendant has demonstrated that plaintiff herein is a professional medical corporation which has shared as much as 65% of its gross revenues with a corporation owned by a non-physician. Plaintiff does not dispute these facts in its reply papers.
At the time this motion was submitted, the Court of Appeals had ruled on this issue in State Farm Mut. Auto. Ins. Co. v Mallela (4 NY3d 313 [2005]). In Mallela, the Court of Appeals *570 answered a certified question from the United States Court of Appeals for the Second Circuit. The Court was asked to determine “whether, under our ‘no-fault’ insurance laws, insurance carriers may withhold payment for medical services provided by fraudulently incorporated enterprises to which patients have assigned their claims” (id. at 319 [citation omitted]). In answering the question in the affirmative, the Court based its holding on the Superintendent’s amended regulation declaring fraudulently licensed corporations ineligible for reimbursement. The Court held further that State Farm was precluded from recouping payments made by the carrier before April 4, 2002, the effective date of the amended regulation. The Court expressly declined to reach the issue of the viability of heretofore unpaid claims arising under the old regulation. This court will now decide this issue.
In Matter of Gleason (Michael Vee, Ltd.) (96 NY2d 117, 122 [2001]), the New York Court of Appeals observed:
“In determining whether a statute should be given retroactive effect, we have recognized two axioms of statutory interpretation. Amendments are presumed to have prospective application unless the Legislature’s preference for retroactivity is explicitly stated or clearly indicated (see, People v Oliver, 1 NY2d 152, 157). However, remedial legislation should be given retroactive effect in order to effectuate its beneficial purpose (see, Majewski v Broadalbin-Perth Cent. School Dish, 91 NY2d 577; Becker v Huss Co., 43 NY2d 527, 540). Other factors in the retroactivity analysis include whether the Legislature has made a specific pronouncement about retroactive effect or conveyed a sense of urgency; whether the statute was designed to rewrite an unintended judicial interpretation; and whether the enactment itself reaffirms a legislative judgment about what the law in question should be (see e.g., Brothers v Florence, 95 NY2d 290, 299; Matter of OnBank & Trust Co., 90 NY2d 725, 730).”
In 1999, in an effort to combat the widespread abuse in no-fault insurance claims, the Superintendent proposed an amended Regulation 68* (see Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854 [2003]). Further, section 65-3.16 (a) *571 (12) of the regulation states, in relevant part, that “[a] provider of health care services is not eligible for reimbursement under section 5102 (a) (1) of the Insurance Law if the provider fails to meet any applicable New York State or local licensing requirement necessary to perform such service in New York.” “In summarizing the new provision, the department provided its opinion that such a result had previously been required, stating that § 65-3.16 (a) (12) of the new regulations had been added ‘to clarify that a health care provider must be properly licensed to be eligible for reimbursement under no-fault.’ ” (Michael Billy, Jr. and Skip Short, Insurance Department Regulations to Stem Fraudulent No-Fault Claims Upheld by Court of Appeals, 76 NY St BJ 40, 41 [Jan. 2004].)
The Insurance Department’s interpretation of the insurance regulations is entitled to great deference (see Matter of Medical Malpractice Ins. Assn, v Superintendent of Ins. of State of N.Y., 72 NY2d 753 [1988], cert denied 490 US 1080 [1989]). This court must follow the agency’s interpretation of a regulation unless irrational, or unreasonable, or the interpretation runs contrary to the clear wording of a statutory provision (see Matter of John Paterno, Inc. v Curiale, 88 NY2d 328 [1996]).
Based on the foregoing, improperly licensed providers are precluded from recovering claims submitted prior to the amendment, as the amendment was the clarification of the existing regulation. A retroactive application is appropriate where the regulatory intent of the Superintendent was explicit to remedy widespread abuse and fraud in the filing of no-fault claims by improperly licensed medical providers. To hold otherwise would nullify existing statutory provisions which prohibit a professional medical corporation from being owned and operated by anyone other than licensed medical doctors (Business Corporation Law § 1503 [b]), and bar licensed physicians from sharing fees with nonphysicians (8 NYCRR 29.1 [b] [4]; Education Law §§ 6511, 6530 [19]). Accordingly, defendant’s cross motion for summary judgment is granted and the complaint is dismissed.

 Between 1992 and 2001, reports of suspected automobile insurance fraud increased by 275% the bulk of the increase occurring in no-fault insurance fraud. Reports of no-fault fraud rose from 489 cases in 1992 to 9,191 in 2000, *571 a rise of more than 1,700%. No-fault fraud accounted for three quarters of the 16,902 reports of automobile-related fraud received by the Insurance Department’s Frauds Bureau in 2000, and more than 55% of the 22,247 reports involving all types of insurance fraud. In 1999, the Superintendent established a No-Fault Unit within the Frauds Bureau to focus specifically on no-fault fraud and abuse. By one estimate, the combined effect of no-fault insurance fraud has been an increase of over $100 per year in annual insurance premium costs for the average New York motorist.