1200

■ In the Matter of ELG UTICA ALLOYS, INC., as Successor by Merger to UNIVERSAL WASTE, INC. et al., Petitioner, v DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Respondents.
[983 NYS2d 668]—

Lahtinen, J.P. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Commissioner of Environmental Conservation which denied petitioner's application to reclassify certain of its property on the registry of inactive hazardous waste disposal sites.

Petitioner owns an approximately 21-acre parcel (hereinafter the site) in the City of Utica, Oneida County, on which Universal Waste, Inc.* operated a scrap metal business beginning in the 1950s. The Mohawk River flows in close proximity to the north side of the site and there is a wetland on the site's east border. The site is upgradient from the river and wetland and is within a flood plain. The site, wetlands and river are all contaminated with polychlorinated biphenyls (hereinafter PCBs). Respondent Department of Environmental Conservation (hereinafter DEC) listed the site in 1985 on the inactive hazardous waste site registry as a class 2 site (see ECL 27-1305 [2] [b] [2] ["Significant threat to the public health or environment—action required"]). The current proceeding resulted from petitioner's unsuccessful effort to have the site reclassified as a class 3 site (see ECL 27-1305 [2] [b] [3] ["Does not present a significant threat to the public health or environment—action may be deferred"]).

The lengthy procedural history, briefly set forth herein, began with DEC's involvement at the site in the 1970s when an investigation revealed that PCBs had been disposed of at the site as part of scrap metal salvage activities. DEC classified the site as class 2, premised upon a significant threat to the environment and requiring remediation. DEC sought a summary enforcement order in March 1986, which petitioner opposed contending, among other things, that other parties were also responsible for the contamination in the area and thus were necessary parties. Petitioner also sought reclassification of the

* Petitioner is the successor by merger of Universal Waste. For purposes of this decision, no distinction will be made and petitioner and Universal Waste will hereinafter be referred to as petitioner.

site in 1986 to a class 3 site, which DEC denied. In early 1987, Administrative Law Judge Daniel O'Connor (hereinafter ALJ O'Connor) denied DEC's request for a summary order, finding, among other things, that there was a factual issue requiring a hearing as to whether the contamination at the site constituted a significant threat to the environment (*see* ECL 27-1313 [3]).

Throughout the 1990s, DEC and petitioner engaged in various procedures and investigations regarding the site and, during such time, the Department of Health issued advisories regarding fish consumption for a large section of the river inclusive of the area of river near the site. In 1998, DEC reclassified the site to class 2a, which was a temporary classification indicating that further investigation was necessary. Additional testing was conducted on and near the site and, in 2002, DEC returned the site to class 2 status. In 2003, petitioner submitted the relevant application, seeking to delete the site from the registry or, alternatively, to reclassify it to class 3. Petitioner asserted that the site did not present a significant threat to the environment because its contamination was not migrating off the site and there were multiple other sources in the area contributing to the pollution of the river. DEC summarily denied the petition. However, petitioner successfully had the summary denial overturned in a proceeding pursuant to CPLR article 78 in which Supreme Court directed a hearing before an administrative law judge regarding petitioner's request for reclassification of the site (*Matter of Universal Waste, Inc. v New York State Dept. of Envtl. Conservation*, 4 Misc 3d 500 [2004]).

A hearing was held in October 2004 and February 2005 before Administrative Law Judge Maria Villa (hereinafter ALJ Villa). Petitioner abandoned its request to have the site deleted from the registry and, accordingly, the primary issue distilled to whether petitioner established that the site was not a significant threat to the environment so that it could properly be reclassified as a class 3 site (*see* ECL 27-1305 [2] [b] [3]). In April 2006, ALJ Villa, in a detailed hearing report, rendered a recommended decision finding that the site was contaminated with PCBs, but that it did not pose a significant threat to the environment and should be reclassified as class 3. Thereafter, the parties submitted extensive comments to respondent Commissioner of Environmental Conservation and, after a lengthy delay, the Commissioner issued a final decision in October 2011. The Commissioner denied petitioner's request to reclassify the site, concluding that petitioner had failed to establish by a preponderance of the evidence that the site did not present a significant threat to the environment. This proceeding ensued.

Petitioner first argues that the Commissioner exceeded his jurisdiction by reviewing ALJ Villa's decision. This argument rests upon a change in the regulations that occurred during the delay between ALJ Villa's hearing report and the Commissioner's final determination. At the time of the hearing and ALJ Villa's report, the regulations provided a two-step procedure in which, following the hearing and ALJ's recommended decision, the Commissioner then reviewed the record and considered further comments before rendering the final determination (*see* 6 NYCRR former 375-1.9 [d] [2] [ii]; 624.13). In late 2006, amendments to the 6 NYCRR part 375 regulations included changing the two-step procedure. Under the new procedure, the assistant director of the division of environmental remediation (or such other individual as may be designated) conducts the hearing and renders a decision that constitutes the final agency action (*see* 6 NYCRR 375-2.7 [f] [5] [ii] [b]).

An agency's interpretation of its own regulation is entitled to deference (*see Matter of 427 W. 51st St. Owners Corp. v Division of Hous. & Community Renewal*, 3 NY3d 337, 342 [2004]), and there is no indication here that the new regulation was intended to apply to hearings where an ALJ had already rendered a recommended decision under the two-step process (*cf. Matter of Duell v Condon*, 84 NY2d 773, 783 [1995] [intent of body enacting rule is primary consideration regarding whether it is retroactive]; *A.T. Med., P.C. v State Farm Mut. Ins. Co.*, 10 Misc 3d 568, 571 [2005] [Insurance Department's interpretation of its regulation as retroactive upheld]). The regulatory change occurred when the review process was in mid-stream and there was neither a clear way to fully implement the new procedure to the partially completed process nor a request by the parties to do so. At the time of ALJ Villa's recommended decision, she was not a person designated to render final agency action in the matter and, in fact, her decision makes clear—consistent with regulations then in effect—that the final determination rested with the Commissioner. Although the new regulations became effective before the Commissioner's final determination was rendered, there was no provision in the regulations for the new procedures to apply to pending matters in which the hearing had already been conducted and a hearing report issued (*cf. Matter of Regenbogen v New York State Willard Psychiatric Ctr.*, 254 AD2d 593, 594-595 [1998] [statutory amendment to Workers' Compensation Law § 20 (2) (a) expressly "applied 'to all claims pending on or after' its effective date"]). Under such circumstances, the Commissioner did not err in reviewing the record and rendering a final determination. We find no merit in petitioner's contention that the Commissioner's determination

was ultra vires and that petitioner is entitled to a writ of prohibition against the Commissioner (*see generally Matter of Town of Huntington v New York State Div. of Human Rights*, 82 NY2d 783, 786 [1993]).

We consider next petitioner's argument that the Commissioner's determination should be annulled because of the protracted delay between ALJ Villa's recommended decision in 2006 and the Commissioner's final determination over five years later in 2011. The Court of Appeals has recently reiterated that " '[a] rule that rendered every administrative decision void unless it was determined in strict literal compliance with statutory procedure would not only be impractical but would also fail to recognize the degree to which broader public concerns, not merely the interests of the parties, are affected by administrative proceedings' " (*Matter of Dickinson v Daines*, 15 NY3d 571, 575 [2010], quoting *Matter of Syquia v Board of Educ. of Harpursville Cent. School Dist.*, 80 NY2d 531, 535 [1992]). "Limits regarding the time within which an administrative agency must act 'are generally construed as discretionary in the absence of express limits on the authority of the agency to act after the time period' " (*Matter of Court Reporting Inst. v New York State Educ. Dept.*, 237 AD2d 1, 4 [1997], quoting *Matter of Estate of Clifford v New York State Empls. Retirement Sys.*, 123 AD2d 1, 4 [1986]). "When an administrative body fails to comply with procedural provisions that are merely directory, relief will be granted only if petitioner[ ] show[s] that substantial prejudice resulted from the noncompliance" (*Matter of Syquia v Board of Educ. of Harpursville Cent. School Dist.*, 80 NY2d at 535-536). The statute directing the Commissioner to provide a written determination within 30 days of receipt of the complete record does not expressly limit action thereafter or set forth specific consequences (*see* ECL 27-1305 [2] [c] [3]). Moreover, given the statutory scheme and significant public concern implicated, we are unpersuaded that the time frame must be considered mandatory. Although we do not condone the Commissioner's protracted delay, nonetheless petitioner failed to establish substantial prejudice resulting therefrom. The delay thus does not necessitate annulment of the Commissioner's determination.

Petitioner asserts that various errors of law occurred including, among others, that the Commissioner used a standard for determining whether there was a "significant threat" that was inconsistent with the regulations and case law. When striking down an earlier version of a 6 NYCRR part 375 regulation, the Court of Appeals ruled that a "significant threat" must be based

upon an actual threat and not solely upon a potential harm resulting from the mere presence of hazardous waste (*see Matter of New York State Superfund Coalition v New York State Dept. of Envtl. Conservation*, 75 NY2d 88, 93 [1989]). Consistent with the *New York State Superfund Coalition* case, pertinent regulations provide that "the mere presence of hazardous waste at a site . . . is not a sufficient basis for a finding that hazardous waste disposed at the site constitutes a significant threat to the environment" (6 NYCRR former 375-1.4 [c]; *see* 6 NYCRR 375-2.7 [a] [4]).

The Commissioner did not, however, premise his determination in this matter upon the mere presence of PCBs at the site and a potential for harm. He found that a highly toxic contaminant (i.e., PCBs) was present in concentration levels at the site that exceeded the environmental quality standards (*see* 6 NYCRR part 703; *see also* 6 NYCRR former 375-1.4 [b] [7]; 375-2.7 [a] [3] [viii]), and he determined that, under such circumstances, the contaminant could constitute a significant threat. We need not decide in this case whether such exceedances of environmental standards alone can—as stated by the Commissioner—constitute a significant threat since ultimately he did not premise his determination solely on such ground. Although setting forth in detail the reasons and record proof supporting a conclusion that the onsite impact of the PCB contamination at the site constituted a significant threat, he went on to find record support for actual threats and offsite impact on the river, wetlands and nearby wildlife. The exceedances of groundwater standards was clearly a significant factor; however, it was considered in conjunction with other proof pertinent to the ultimate finding of a significant threat. We are not persuaded that the Commissioner used an analysis at odds with the regulations or case law.

Petitioner's further contention that the Commissioner was bound under the doctrine of collateral estoppel from giving such significance to the exceedances of environmental standards because of language in ALJ O'Connor's 1987 decision denying DEC's request for summary enforcement is without merit. We also find unavailing petitioner's assertions that the Commissioner's determination constituted an unexplained change in DEC's interpretation of the law or the adoption of a new rule without adhering to the State Administrative Procedure Act.

Next, we consider petitioner's argument that the Commissioner's determination is not supported by substantial evidence. The Commissioner "may make his own findings of fact and need not adopt those of the ALJ" (*Matter of Jackson's Marina v*

*Jorling*, 193 AD2d 863, 866 [1993]; *see Matter of R & B Autobody & Radiator, Inc. v New York State Div. of Human Rights*, 31 AD3d 989, 990 [2006]). His "assessment of the credibility of witnesses, inferences to be drawn from the evidence and findings of fact are conclusive if supported by substantial evidence" (*Matter of Puff v Jorling*, 188 AD2d 977, 980 [1992]; *see Matter of Murtaugh v New York State Dept. of Envtl. Conservation*, 42 AD3d 986, 987-988 [2007], *lv dismissed* 9 NY3d 971 [2007]). "[E]ven if different conclusions could be reached as a result of conflicting evidence, a court may not substitute its judgment for that of the [Commissioner] provided that the administrative determination is properly supported by the record" (*Matter of Lane Constr. Corp. v Cahill*, 270 AD2d 609, 611 [2000], *lv denied* 95 NY2d 765 [2000]; *see Matter of Riverkeeper, Inc. v Johnson*, 52 AD3d 1072, 1074 [2008], *lv denied* 11 NY3d 716 [2009]).

It is undisputed that PCBs are highly toxic and a potential cause of serious health issues in humans and animals. There is also no disagreement that PCBs were disposed of at the site; however, the level of contamination on site and migration off site are disputed. The Commissioner found that in excess of 25 tons of materials containing PCBs had been disposed of at the site between 1957 and 1978. Unlike ALJ Villa, the Commissioner found credible the testimony of a former employee of petitioner who reported that, during his employment at the site, he personally dumped PCB-ridden oil from about 90 transformers per week (the equivalent of 5,000 gallons of oil) onto the ground without any precautionary measures or efforts to control the contamination. There was no evidence of meaningful cleanup efforts, and the Commissioner concluded that the "massive quantities" of PCBs either remained at the site or had migrated to the wetlands and the Mohawk River. The Commissioner discussed at length the soil and groundwater testing at the site and, while noting conflicting evidence, set forth the factors and proof he found persuasive. Among other things, he reiterated the indiscriminate disposal of tons of PCBs, the lack of cleanup or otherwise accounting for the PCB-contaminated waste, and evidence of onsite contamination levels above state standards for both soil and groundwater.

The Commissioner set forth his reasons for finding offsite impact, including testimony of DEC staff, testing and investigation that he credited. Disagreeing with ALJ Villa, he did not find such proof less persuasive than petitioner's expert, who opined that the migration of PCBs off of the site was occurring minimally, if at all. Moreover, although there was proof that

other sources in the area were contributors to the offsite PCB contamination, there was also evidence that PCBs disposed at the site were contributing to offsite contamination. After review of the record and accepting the Commissioner's many credibility determinations regarding the conflicting proof, much of which involved highly technical matters, we are unpersuaded that the determination is not supported by substantial evidence. The remaining arguments have been considered and are unavailing.

Stein, Garry and Rose, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.