OPINION OF THE COURT
Theresa M. Ciccotto, J.
Plaintiffs move, via order to show cause (OSC), for an order pursuant to CPLR 2304, 2303, and 311, quashing defendant’s judicial subpoena duces tecum and granting plaintiffs a protective order pursuant to CPLR 3103 (a). Defendant opposes.
After a review of the papers presented, all relevant statutes and case law, the court grants the OSC in part and denies it in part.
Factual and Procedural Background
The instant action was commenced to recover first-party no-fault benefits in the amount of $3,674.68, for medical services rendered to plaintiffs’ assignor as a result of injuries he allegedly sustained in an automobile accident occurring on or about May 19, 2012. Plaintiffs commenced the action via service of a summons and complaint on or about May 17, 2013. Defendant interposed its answer on or about August 22, 2013.
On or about April 2, 2014, defendant served a subpoena duces tecum upon TD Bank, located at 1701 Route 70, East Cherry Hill, NJ 08034. The subject subpoena indicates that the information sought is related to the time period of “January 1, 2008 or the date of the account origination, whichever is earlier, to the present.” Additionally, the subpoena demands the production of all documentation related to specific account number (REDACTED). No names of any individuals appear therein.
The following documentation sought includes:
“a) monthly account transaction statements; b) copies of all checking statements, cancelled checks, including both the front of the check and the back; c) copies of all bank reconciliations; d) account formation and governance documents, including but not limited to signature cards, powers of attorney and corporate resolutions; e) all documents *928 reflecting or relating to deposits and/or cash withdrawals, electronic fund transfers and/or wire transfers, including but not limited to all deposit and/or withdrawal slips; f) copies of all documentation relating to any and all loan accounts and/or investment accounts, including but not limited to mortgages and lines of credit, and any and all statements, payments and loan draws; and g) all correspondence between the bank and each of the account holders identified above.”
Said subpoena also directs TD Bank to produce all documents pertaining to account number (REDACTED) for the time period January 1, 2008 to the present (see aff in opp, exhibit A).
Positions of the Parties
Plaintiffs argue that their OSC to quash the subject subpoena is an absolute necessity in view of said subpoena’s numerous fatal defects. First, they argue that the subpoena was not properly served in accordance with the methods promulgated by CPLR 311, and also that no proof of service has been submitted. Next, they argue that defendant’s subpoena fails to tender, in advance, traveling expenses to the witness(es) as required by CPLR 2303. Plaintiffs further argue that since the subpoena is overly broad, excessive, and fails to name the holder of the aforementioned account number, it is tantamount to the proverbial “fishing expedition,” where the sole intent is to “ascertain whether documents exist rather than to compel the production of specific documents” (OSC f 8). Lastly, plaintiffs argue that this court should grant their request for a protective order, so as to shift the burden on defendant to prove that the information it seeks is “material and necessary” for its defense in this action (id. f 17).
In opposition, defendant argues that it properly served the subpoena on the nonparty witness, TD Bank, pursuant to CPLR 2303. Defendant annexes a copy of the affidavit of service demonstrating that on April 18, 2014, personal service was effected upon Michael Esposito, “Store Manager,” of the TD Branch located at 2025 Broadhollow Road, Farmingdale, NY 11735 (aff in opp, exhibit A). Said affidavit also indicates that Ryan LeGrady, the individual who served same, requested Mr. Esposito to provide photo identification. In response, Mr. Esposito produced a New York State driver’s license. Defendant also argues that the absence of the witness fee requirement does not render the subpoena defective, in that the instant *929 subpoena seeks documents, as opposed to the actual appearance of any individual(s). Defendant further argues that plaintiffs lack standing to challenge the basis of the subpoena because they simply “do not have a proprietary or possessory interest in the bank records sought” (id. *][ 7).
Furthermore, defendant argues that it is entitled to the production of the demanded documents because they are material and necessary evidence related to defendant’s Mallela defense (State Farm Mut. Auto. Ins. Co. v Mallela, 4 NY3d 313 [2005]). In Mallela, the Court of Appeals held that a
“medical corporation that was fraudulently incorporated under N.Y. Business Corporation Law §§ 1507, 1508, and N.Y. Education Law § 6507 (4)(c) [is not] entitled to be reimbursed by insurers, under New York Insurance Law §§ 5101 et seq., and its implementing regulations, [even] for medical services rendered by licensed medical practitioners” (Mallela, 4 NY3d at 320).
In support of its Mallela argument, defendant annexes the examination under oath transcript of Dr. Brij Mittal, owner of plaintiff Jamaica Wellness Medical, P.C., as its exhibit E. Defendant argues that Dr. Mittal’s testimony raises increasing suspicion regarding the formation and ownership of Jamaica Wellness Medical, P.C. Specifically, Dr. Mittal testified that his license had previously been revoked for misuse and that he took over a “fully functional medical practice, with support staff, without any payment or agreement” (aff in opp f 15). Furthermore, defendant asserts that this testimony unequivocally demonstrates that “Dr. Mittal is completely unfamiliar with the practice of retaining physical therapists from an ‘agency’ whose name he does not know and that Dr. Mittal admitted to practices that constitute improper billing for services rendered by non-employees in violation of the No-Fault Regulations” (id.).
Therefore, defendant argues that it has demonstrated that its Mallela-based defenses are meritorious and that the subpoena at issue seeks material related to said defenses. Furthermore, defendant argues that since its disclosure demands are made with good cause, plaintiffs are not entitled to the issuance of a protective order.
Conclusions of Law
The court first finds that service of the subject subpoena was proper, in that it was personally served “upon [a] domestic . . . *930 corporation, to [a] . . . managing . . . agent,” in accordance with CPLR 311 (a) (1). The court rejects plaintiffs’ contention that defendant’s subpoena is defective in that defendant failed to tender traveling expenses in advance to the witness as required by CPLR 2303. The subject subpoena specifically pertains to the production of documents, not any individual, and clearly states that said documents may be mailed to defendant’s attorney.
The court now addresses what it perceives to be the more significant issue at hand, that is the substance and relevance of the subject subpoena. The court finds defendant’s argument that plaintiffs lack standing to contest the subpoena to be unavailing. A motion to quash may be made by the nonparty witness or “by one of the parties or a party’s lawyer” (McDaid v Semegran, 16 Misc 3d 1102[A], 2007 NY Slip Op 51227[U], *3 [Sup Ct, Nassau County 2007]; see also Snedeker v Schiff Hardin LLP, 2010 NY Slip Op 30151[U] [Sup Ct, Nassau County 2010]). “An application to quash a subpoena should be granted ‘[o]nly where the futility of the process to uncover anything legitimate is inevitable or obvious’ ... or where the information sought is ‘utterly irrevelant to any proper inquiry’ ” (Matter of Kapon v Koch, 23 NY3d 32, 38 [2014]; see also Anheuser-Busch, Inc. v Abrams, 71 NY2d 327, 331-332 [1988], citing Matter of Edge Ho Holding Corp., 256 NY 374, 382 [1931]). The party moving to vacate the subpoena bears the burden of establishing that the subpoena should be vacated under such circumstances (see Matter of Dairymen’s League Coop. Assn., Inc. v Murtagh, 274 App Div 591 [1st Dept 1948]; Ledonne v Orsid Realty Corp., 83 AD3d 598, 599 [1st Dept 2011]).
In contemplating the relevance and extent of the disclosure/ discovery demanded in a subpoena duces tecum, one must first look to CPLR 3101 for guidance and instruction. Pursuant to CPLR 3101 (a) (4), a party may obtain discovery from a nonparty in possession of material and necessary evidence, provided that the nonparty is informed of the circumstances or reasons disclosure is sought. CPLR 3101 provides in pertinent part: “(a) Generally. There shall be full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof, by: ... (4) any other person, upon notice stating the circumstances or reasons such disclosure is sought or required.”
“The [phrase] ‘material and necessary’ [is] ... to be interpreted liberally to require disclosure, upon request, of any *931 facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason” (Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406 [1968]; see also Yoshida v Hsueh-Chih Chin, 111 AD3d 704, 705 [2d Dept 2013]; Medical Polis, P.C. v Progressive Specialty Ins. Co., 34 Misc 3d 153[A], 2012 NY Slip Op 50342[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2012]; Lexington Acupuncture, P.C. v General Assur. Co., 35 Misc 3d 42 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2012]).
CPLR 3101 (a) (4) also contains a notice requirement with regard to nonparties, wherein the subpoenaing party must first state either on the face of the subpoena, or in a notice accompanying it, “the circumstances or reasons such disclosure is sought or required” (Kapon v Koch, 23 NY3d at 34). It is evident that the CPLR imposes more rigid and stringent requirements for disclosure demands made on a nonparty as opposed to an actual party, “presumably to afford a nonparty who has no idea of the parties’ dispute or a party affected by such request an opportunity to decide how to respond” (Velez v Hunts Point Multi-Serv. Ctr., Inc., 29 AD3d 104, 110 [1st Dept 2006]).
In Kapon, the Court of Appeals rejected the argument “that CPLR 3101 (a) [(4)] contains distinctions between disclosure required of parties and nonparties” (Kapon at 36), and has also instructed that CPLR “3101 (a) (4) imposes no requirement that the subpoenaing party demonstrate that it cannot obtain the requested disclosure from any other source” {id. at 38). Moreover, if the subpoenaing party complies with the notice requirement promulgated by CPLR 3101 (a) (4), it merely needs to establish that the discovery it seeks is “material and necessary” to the prosecution or defense of the action {id.). However, with a motion to quash a subpoena, the party or nonparty still must establish that the discovery sought is “utterly irrevelant” to the action or that the “futility of the process to uncover anything legitimate is inevitable or obvious” (id., citing Matter of Edge Ho Holding Corp. at 382; see also Ferolito v Arizona Beverages USA, LLC, 119 AD3d 642, 643 [2d Dept 2014]).
This court has witnessed the meteoric rise of the Mallela defense in the past year. In some cases, the carrier denies a plaintiff no-fault benefits based solely on the mere suspicion of fraudulent activity. In other cases, the carrier establishes a well articulated and reliable basis for its denial. Consequently, with regard to the issue of whether a professional entity is *932 fraudulently incorporated, the court has grappled with the two profound competing interests involved. These interests are a plaintiff’s right to privacy with regard to its financial records and business affairs, and defendant’s right to the disclosure of and access to “relevant” information in its legitimate quest to expose a fraudulently incorporated professional service corporation. Indeed, this appears to be the primary reason that “[t]he supervision of discovery, the setting of reasonable terms and conditions for disclosure, and the determination of whether a particular discovery demand is appropriate, are all matters within the sound discretion of the trial court, which must balance competing interests” (Kooper v Kooper, 74 AD3d 6, 17 [2d Dept 2010]).
In the case at bar, the court acknowledges defendant’s zealous attempt to illuminate what, quite frankly, does appear to be illegal conduct. However, the deficiency inherent in the subpoena it relies on to obtain proof of same, severely undermines its efforts. Simply put, defendant’s subpoena fails to state on its face, or via an accompanying notice, “the circumstances or reasons such disclosure is sought or required” (Kapon, 23 NY3d at 39). This is a procedural defect which this court cannot overlook.
“As to motions for a protective order, CPLR 3103(a) not only permits a non-party witness to seek such an order in his/her own right, but also permits any party opposing the disclosure to make the motion” (McDaid v Semegran, 2007 NY Slip Op 51227[U], *2, quoting Matter of MacLeman, 9 Misc 3d 1119[A], 2005 NY Slip Op 51675[U], *5 [Sur Ct, Westchester County 2005]; see also Snedeker v Schiff Hardin LLP; Nexray Med. Imaging PC v Allstate Ins. Co., 39 Misc 3d 1237[A], 2013 NY Slip Op 50910[U] [Nassau Dist Ct 2013]). The burden is on the moving party to establish the need for a protective order (see Koump v Smith, 25 NY2d 287, 294 [1969]; Vivitorian Corp. v First Cent. Ins. Co., 203 AD2d 452, 452-453 [2d Dept 1994]).
“A motion for a protective order ... is addressed to the sound discretion of the trial court” (Boylin v Eagle Telephonies, 130 AD2d 538, 538 [2d Dept 1987]). CPLR 3103 (a) provides that
“[t]he court may at any time on its own initiative, or on motion of any party or of any person from whom or about whom discovery is sought, make a protective order denying, limiting, conditioning or regulating the use of any disclosure device. Such *933 order shall be designed to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts.”
In the case at bar, the court does not find the subject subpoena to be unduly restrictive or prejudicial. As such, it does not believe that granting plaintiffs’ application for a protective order is necessary.
Therefore, in accordance with the foregoing, it is hereby ordered that the portion of plaintiffs’ OSC wherein they seek to quash the subpoena is granted based on defendant’s failure to provide the nonparty witness with the notice required under CPLR 3101 (a) (4); and it is further ordered that the portion of plaintiffs’ OSC wherein they seek a protective order is denied; and it is further ordered that defendant may serve the subpoena again, accompanied by the required notice.