5539-181 & 182 Prospect Park W. Brooklyn LLC v Rivera (2026 NY Slip Op 26009)

[*1]

5539-181 & 182 Prospect Park W. Brooklyn LLC v Rivera

2026 NY Slip Op 26009

Decided on January 14, 2026

Civil Court Of The City Of New York, Kings County

Bacdayan, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on January 14, 2026
Civil Court of the City of New York, Kings County

5539-181 and 182 Prospect Park West Brooklyn LLC, Petitioner

againstChristopher Rivera; CHRISTIAN RIVERA; ALEXANDER RIVERA; 
 ANGELO RIVERA; CYNTHIA RIVERA; CYNTHIA VARGAS; JOHN DOE; JANE DOE, Respondent.

L&T Index No. 301046-22

Rose & Rose (Jainey Elizabeth Samuel, Esq.), for petitionerLegal Aid Society (Madison Rae Hays, Esq.), for respondent Christopher Rivera

Karen May Bacdayan, J.

Motion Seq Nos. 7 [FN1]

Recitation, as required by CPLR 2219 (a) of the papers considered in review of these orders to show cause by NYSCEF Doc Nos: 178-183, 187, 191.
BACKGROUND AND PROCEDURAL POSTUREThis is a summary holdover proceeding commenced in January 2022, whereby petitioner seeks possession of the rent-controlled subject premises following the death of the rent-controlled tenant, Edna Rivera, on August 8, 2021. Petitioner alleges that respondent, Christopher Rivera, hereinafter the only respondent to whom this decision refers, is a licensee and does not have succession rights to the subject premises. (NYSCEF Doc No. 1, petition ¶¶ 4-8, 11; id. at 8-9, notice of termination of license and/or notice to quit.) Respondent initially defaulted and a default judgment of possession was entered. Subsequently, respondent retained [*2]counsel, and the default judgment and warrant were vacated.[FN2]

As is relevant to the instant orders to show cause, on October 25, 2024, the court signed judicial subpoenas duces tecum and ad testificandum on the New York City Administration for Children's Services ("ACS"), and on the New York State Office of Children and Family Services ("OCFS"). (NYSCEF Doc Nos. 70, 72.) Petitioner served the subpoena on November 5, 2024. (NYSCEF Doc No.73.)
The subpoenas seek the following documents:
"Certified copies of any and all applications, certifications, background checks on the applicant and applicant's household, medical clearance, proof of training completion, safety assessment on the conditions of the home which includes whether the subject of the charge or conviction lives in the household and the extent the individual may have contact with the foster child or other children living in the household, proof of completion of certification and approval process, annual renewals of certifications/approvals, concurrent certification/approval, emergency certification/approval, records, logs, notes, reports, comments, observations, evaluations, examinations, notes and reports regarding home visits, social work service visits and reports, caseworker home visits and reports, assessments, and any other written memorandum regarding Edna Rivera [] except that the documents requested may be limited to those which reference the residence of Edna Rivera [] and the names and ages of members and foster children, including but not limited to: their respective residences, addresses, contact information. occupancy. presence or lack thereof at the subject premises, as well as patients intention and ability to return to the subject apartment, if applicable."[FN3](NYSCEF Doc No. 70, so-ordered subpoena on ACS; NYSCEF Doc No. 72, so-ordered subpoena on OCFS.) In the subpoena, petitioner explained, 
"These documents are material and relevant to Respondent-Occupant Christopher Rivera's succession claim to the apartment of the deceased tenant-of-record Edna Rivera (SSN: DOB: [XX/XX/1941]) located at 181 Prospect Park West, Apartment 13, Brooklyn, New York 11215 who was a 'foster parent' and in the childcare industry as noted on her death certificate annexed hereto as Exhibit 'A', based on Respondent-Occupant Christopher Rivera's claim that he is the son of the deceased tenant-of record and resided in the subject premises as his primary residence during the period of August 9, 2019 to August 8, 2021."On September 16, 2025, petitioner filed the instant order to show cause seeking to hold ACS and OCFS in civil contempt of court for failing and refusing to comply with the so-ordered judicial subpoenas, or alternatively to compel ACS and OCFS to comply with the subpoenas.
On October 14, 2025, respondent filed an order to show cause seeking to quash the subpoenas served upon ACS and OCFS, as "impermissibly broad and constituting a fishing expedition and an attempt to engage in back-door discovery for which [p]etitioner has not been granted leave, and seeking fees and costs and other relief the court deems just and proper. (NYSCEF Doc No. 183, signed order to show cause [motion sequence 7].)
On November 18, 2025, the court held a conference. Present were petitioner's counsel, respondent's counsel, and counsels for OFCS. Petitioner withdrew her motion for contempt against OFCS on the record. (NYSCEF Doc No. 190, order memorializing conference dated November 18, 2025.) ACS did not appear in court on November 18, 2025. However, on November 17, 2025, an ACS representative had emailed ACS responsive records spanning from February 12, 2020 to April 7, 2020. The parties, but not the court, reviewed the subpoenaed material in camera on November 18, 2025, and respondent's counsel determined to move forward with respondent's motion to quash the ACS subpoena.
Oral argument was held on January 8, 2026.[FN4]

ARGUMENTS - Respondent's Order to Show Cause to Quash ACS SubpoenaPetitioner has not contested respondent's standing to file this motion to quash. (See Jamaica Wellness Med., P.C. v. USAA Cas. Ins. Co., 49 Misc 3d 926 [Civ Court, Kings County 2015] ["A motion to quash may be made by the non party witness or by one of the parties or a party's lawyer (internal citations and quotation marks omitted)."
Regarding the subpoena on ACS, respondent states several bases for why they believe the subpoena should be quashed: (1) petitioner failed to seek documents from ACS when the parties engaged in pre-trial discovery and cannot now "engage in back-door discovery" without leave of court; (2) petitioner fails to state a basis for why ACS would have the demanded documents, given that "individuals case records are required to be maintained and stored by the county social services department where the foster child resides in accordance with 18 NYCRR [] 428.1(a)(2)"; (3) petitioner failed to limit the time period for the sought-after records in any respect, much less the relevant co-residency time period in dispute, which respondent states is August 2019 to August 2021; (4) in using the words "any and all" to describe the sought-after records "over an unreasonable span of time," petitioner failed to specify the records with [*3]reasonable particularly, and failed to include any limiting instruction as to private matters; (5) petitioner improperly attempts to use the subpoena to ascertain the existence of particular records for the relevant time period in dispute; (6) petitioner's failure to include any limiting instruction to redact confidential information regarding "the names and ages of household members and foster children, including but not limited to: their respective residences, addresses, contact information, occupancy, presence or lack thereof at the subject premises, as well as patients intention and ability to return to the subject apartment, if applicable" risks disclosure of private and confidential records of foster children who are not parties to the instant proceeding; and (7) petitioner's failure to include any limiting instruction to redact confidential information regarding "medical clearance" risks disclosure of private and confidential medical records that are irrelevant to the instant proceeding. (NYSCEF Doc No. 180, respondent's memorandum of law at 6-9.)
Respondent further argues that the subpoena on ACS lacks reasonable particularity due to the absence of any referenced timespan for the sought-after records and "essentially requests all records on file pertaining to Ms. Edna Rivera's occupation as a foster parent and the children she fostered, making it difficult to determine what records [p]etitioner in fact seeks to have produced." (Id. at 9.) Respondent contends that by omitting any time period, petitioner is improperly "using this subpoena to uncover the existence of evidence . . . ." (Id.) Lastly, respondent argues the court should not condone any efforts of petitioner to use records produced by the subpoenas to impeach the testimony or credibility of respondent or other witnesses. (Id.)
In opposition, Petitioner argues that respondent (1) has engaged in "bad faith reading" of the subpoena as it is far more limiting that respondent characterizes it to be, (2) that respondent has impermissibly and fatally delayed in moving to quash the trial subpoenas pursuant to CPLR 2304 as the original return date of the subpoenas was in November 2024, and that (3) respondent is incorrect that the subpoenas are "overly broad," or are "impermissibly vague." Petitioner argues that the fact that the court controlled the timing of the motion to quash is no excuse. Anticipating respondent's reply, petitioner further advances that it would be impermissible for respondent to address the issue of timeliness in reply. (NYSCEF Doc No. 187, petitioner's attorney's affirmation ¶ 53, 79.)
In reply, respondent argues that this court may either excuse their delay in moving to quash the ACS subpoena pursuant to CPLR 2004, or, in the alternative, sua sponte issue a protective order pursuant to CPLR 3101. Respondent provides more detail in reply to excuse what petitioner characterizes as an unreasonable delay which petitioner argues "alone" warrants denial of the motion to quash. (NYSCEF Doc No. 191, ¶¶ 5-12.)
DISCUSSION
Timeliness of Respondent's Motion to QuashAs an initial matter, the issue of timeliness of respondent's motion, raised in petitioner's opposition is properly considered by the court. Petitioner argues that "the untimeliness of [r]espondent's motion to quash - alone - is sufficient to deny [r]espondent's motion (emphasis added)." (NYSCEF Doc No. 187, petitioner's attorney affirmation in opposition ¶ 53.) Accordingly, petitioner has characterized its argument of untimeliness as dispositive. Schultz v Gershman, 68 AD3d 426 (1st Dept 2009), cited by petitioner in support of this argument, involved evidence raised for the first time in reply papers regarding the trading history of a particular stock which the court found did not establish a defense to plaintiff's suit for breach of contract and unjust enrichment. More apropos is Newport E. Inc. v Sviba Floral Decorators, [*4]Inc., 202 AD3d 482, 484 (1s Dept 2022). In Newport, the court did "consider [the reply argument] as it is determinative" finding that the argument "does not allege new facts, and is a legal argument on the face of the record that would not have been avoidable if raised in defendants' moving brief below, and because the record is sufficient to resolve the issue." (Id. at 484.) Here, respondent merely addresses an issue raised by petitioner in opposition by summarizing the procedural posture of the proceeding, which is sufficient in the court's view to resolve the issue. (Id.; Powell v City of New York, 218 AD3d 1, 6 [1st Dept 2023] ["The additional arguments or evidence submitted by a movant in reply papers may be considered if such evidence or arguments merely respond to the arguments raised in the opposition papers[.]")
The court is very familiar with the facts of this protracted, hotly contested, high-stakes proceeding in which respondent's first attorney was required by federal regulations to withdraw as counsel, and respondent was fortunate enough to retain a second free attorney through the Universal Access to Counsel initiative. Petitioner further argues that "a motion to quash as part of a motion schedule, in of itself, does not mean that the motion is timely or should be granted." (NYSCEF Doc No. 187, ¶ 53.) However, "courts have an inherent power over the control of their calendars and the disposition of business before them." (Hochberg v Davis, 171 AD2d 192, 194 [1st Dept 1991].)
The Propriety of the Scope of the SubpoenaRespondent argues that subpoenas may not be utilized to seek information that a party neglected to seek during discovery, citing to Mestel & Co. v Smythe Masterson & Judd, 215 AD2d 329 (1st Dept 1995). Petitioner denies that it is attempting to engage in "backdoor" discovery, and claims that respondent "incorrectly cite[s] to case[s] . . . that do not say what they claim." (NYSCEF Doc No. 187, ¶ 73.) To ostensibly correct the record, petitioner summarizes Mestel as follows: "[The Mestel court] found the subpoena improper not because of its timing or that the issuing party did not seek the information during discovery. Rather, the subpoena was improper due to the substance and overly broad demands, calling it 'wide-ranging discovery (emphasis added).'" (Id.) The court accepts petitioner's characterization of the Mestel case which segues nicely into the court's next point of discussion.
Respondent advances that petitioner broadly and impermissibly applies the modifier "any and all" to a laundry list of documentation which is utterly irrelevant to respondent's presence in the apartment even if it is in the possession of the subpoenaed parties. While petitioner argues that it has adequately limited the request, the limiting language to which petitioner directs the court states that the subpoenas may be limited to those that reference the address of Edna Rivera, the deceased tenant of record, and the following information which, in fact, seeks much more:
"[T]he names and ages of household members and foster children, including but not limited to their respective residences, addresses, contact information, occupancy, presence or lack thereof at the subject premises, as well as patient[']s intention and ability to return to the subject apartment if applicable (emphasis added),"[FN5]
It is not disputed that respondent was adopted by the tenant of record and was not, for over a decade prior to the death of the tenant of record, a foster child; thus, information related to "[foster children's] . . . residences, addresses, contact information, [and] occupancy" would not elicit information related to respondent but rather to the foster children living in the premises. In addition, the court does not consider that requesting information regarding the "presence or lack thereof" of persons living in the apartment to be specific enough to withstand scrutiny. While it is certainly possible to determine the presence of triable facts or lack thereof, or a cause of action or lack thereof, or of relevance or lack thereof, it is questionable how one would determine the "lack thereof" of individuals who consider the foster parent's home to be their intended domicile.[FN6]
If petitioner were seeking records pertinent to respondent, Christopher Rivera, respondent should have sought those specific records.
Instead, petitioner cast a wide net, likely to yield sensitive information regarding children who have been placed in foster homes very often for tragic, highly personal, and confidential reasons related to, inter alia, abandonment, abuse, neglect, and addiction, or because their parents are experiencing serious medical, emotional, or financial difficulties and cannot appropriately care for their children.[FN7]
 Petitioner cites to the Foster Care Manual requirements for supervising agencies as support for its conclusion that "it is clear that the information and documents sought exist." (NYSCEF Doc No. 50, petitioner's attorney's affirmation in opposition ¶ 77.) But petitioner appears to have nothing more than "hope and speculation" that the broad-ranging documents sought from ACS will harvest information highly relevant to the claims asserted herein. (Romeo v City of New York, 261 AD2d 379, 379 [2d Dept 1999].) Petitioner has requested far more information about non-party minors than is reasonably necessary to uncover information about respondent. The online Merriam-Webster Dictionary defines the idiom "to cast/spread one's net wide" as "to try many different things so that one will have the best chance [*5]of finding what one wants."[FN8]
This is the very definition of a fishing expedition.
Disclosure of confidential and private information is discouraged and such requests are held to a higher standard. For example, courts have held that income tax returns will not be discoverable absent a "strong showing that the information is indispensable to the claim and cannot be obtained from other sources" (See e.g. Latture v Smith, 304 AD2d 534 [2d Dept. 2003].) (Gordon v Grossman, 183 AD2d 669, 670 [1st Dept.1992] " ["Because of their confidential and private nature, disclosure of tax returns is disfavored."].) Pursuant to Social Services Law ("SSL") § 372 (3), "Supreme Court may order such disclosure as it deems 'proper' upon application to the Supreme Court by a child's parent, relative, or legal guardian[.]" (Wise v Battistoni, 208 AD2d 755, 756 [2d Dept 1994]; SSL § 372 [3].) Petitioner is not one of the enumerated persons who may seek disclosure of foster care records, and, regardless, a party requesting records bears the burden of demonstrating a "proper" request for the records. (Id.) Here, even though the ACS records are not available from other sources, no such showing that information in foster care records about foster children is legitimately related to petitioner's claim against respondent has been made.
It is not the court's job to prune a subpoena in order to make it right. "The burden of serving a proper demand is upon counsel, and it is not for the courts to correct a palpably bad one (internal citations and quotation marks omitted)." (See New York Cent. Mut. Fire Ins. Co. v Librizzi, 106 AD3d 921, 921 [2d Dept 2013]; Star Auto Sales of Queens, LLC v Filardo, 216 AD3d 839, 840 [2d Dept 2023] [finding that Supreme Court did not abuse its discretion when it vacated the overly broad demands in their entirety]; Latture v Smith, 304 AD2d 534, 536 ["Although some of the plaintiff's 47 requests contained within his demand may be relevant, this court will not prune them (internal citations omitted)."])
Subpoenas should be treated no differently. (Grotallio v Soft Drink Leasing Corp., 97 AD2d 383 [1st Dept 1983] [quashing overly broad subpoena which demanded "any and all" records which requested some relevant material but was likely to produce privileged material]; W. 16th Realty Co. v Ali, 176 Misc 2d 978, 980 [Civ Ct, New York County 1998] [court would not "cull the good from the bad" citing Grotallio, supra, and granting motion to quash subpoena where requests were overly broad in nonprimary residence holdover proceeding].) Recently in Roe v Roman Cath. Archdiocese of New York, 224 AD3d 711 (2d Dept 2024) — a case commenced under the Child Victims Act against a priest for alleged sexual abuse — the Appellate Division, Second Department reversed the Supreme Court which had granted the Church's request for a protective order. The court held that "Supreme Court should have granted the Archdiocese's motion and struck the discovery demand in its entirety, rather than directing the Archdiocese to produce the demanded documents to the court for an in camera inspection to determine relevancy and privilege." (See also Ferrara v Longwood Cent. Sch. Dist., 225 AD3d 671 [2d Dept 2024] [Supreme Court should have issued an order "striking those demands in their entirety instead of pruning them."])
Here, as set forth above, ACS responded to the subpoena during the pendency of this [*6]motion, and petitioner withdrew its motion for contempt.[FN9]
The parties reviewed the records in the courthouse (although petitioner's counsel acknowledged making copies and taking them to her office where they remain to this day). After review, the respondent determined to proceed with the motion to quash. At oral argument, the court had not yet reviewed the subpoenaed records. The court has since reviewed the records.[FN10]
Only one alternative address related to Christopher Rivera is contained in the 77 pages of material produced by ACS in response to the subpoena. While ACS has redacted some material, there remain close-range photographs of a child's body showing cuts, and names of innocent foster children, information regarding their mental health difficulties, their posting of nude photographs on social media, and their biological parents' drug use. The court conducted an internet search for the single address that appears for respondent, and discovered it belongs to a Department of Corrections facility on Rikers Island.[FN11]

The use of broad-ranging, palpably improper subpoenas seeking confidential and private information regarding vulnerable minors who are not parties to the litigation in the hopes of uncovering a useful nugget for litigation should not be condoned.
Accordingly, it is
ORDERED that respondent's motion to quash the subpoena is GRANTED.
Petitioner must return the ACS subpoenaed documents to the court within 3 business days, affirm that they have done so, and file said affirmation on NYSCEF. The court will maintain the documents in the courthouse for 30 days from service by respondent of a notice of entry with proof of service filed on NYSCEF.
The parties will work with the court attorney to arrange trial dates.
DATED: January 14, 2026Brooklyn, NYKAREN MAY BACDAYAN, JHC

Footnotes

Footnote 1:Motion sequence 6 for contempt against the two subpoenaed nonparties was withdrawn by petitioner's counsel.

Footnote 2:Respondent was incarcerated during the pendency of this proceeding and continues to be to this day. As a result, respondent's initial counsel, Brooklyn Legal Services, was prohibited by federal regulations from continued representation. On March 20, 2025, LAS filed a notice of appearance for respondent. NYSCEF Doc No. 86.

Footnote 3:Petitioner's counsel concedes that the words "as well as patients intention and ability to return to the subject apartment, if applicable" was unintentionally included in the subpoenas. NYSCEF Doc No. 118, petitioner's attorney's affirmation ¶ 10.

Footnote 4:On the date of argument, petitioner's counsel asked the court to check for other responses from ACS as they believed that another email with responsive documents may have been sent on December 17, 2025. A search of the court emails revealed that only one email was received on December 17, 2025 date. The subject line of the email is: "Notification: New York DMV — Reservation System — Reservation confirmed." The body of the email stated: "This item is protected by a policy in your organization. Detected issues from data loss prevention. Item contains the following sensitive information: U.S. Driver's License Number." The court is unable to view this email, and cannot confirm that it is from ACS or whether it is a phishing email. It is certainly an odd subject line for an email from ACS. In any case, wherever the email came from, and whoever sent it, did not carefully redact sensitive information.

Footnote 5:While petitioner's counsel dismisses this excess language as "inadvertently left in from a prior subpoena," a party receiving this subpoena could rationally infer that medical documentation related to foster children, utterly irrelevant to this proceeding, has been requested, or that medical documentation related to respondent has been requested, which documentation is discoverable in other ways, and in fact has already been discovered and contested as to its meaning. NYSCEF Doc No. 113, decision and order herein regarding standard to be employed when assessing respondent's disability.Petitioner has not demonstrated that this mistake was brought to the attention of ACS.

Footnote 6:As relevant here, the court in 417 E. Realty Assocs. v Ryan, 110 Misc 2d 607 (Special Term, New York County 1981), observed, "The time has long passed from feudal days when a tenant-farmer resseant du fief. Today we are not obligated to dwell on our "lord's land" and not depart from it. We can move about freely; for good reason, for bad reason, or for no reason at all. We may even establish more than one place of residence; keeping, however, only one domicile." Id. at 612.) The Ryan court provides examples of why a person may not be present in their home at any given time: A person "might travel" or "leave for long-time unknown reasons . . . and might depart for protracted medical or other personal reasons thereby establishing a residence, although temporary, far away from the usual dwelling place (internal citations omitted)."

Footnote 7:Office of Family and Children's Services website, available at 
https://ocfs.ny.gov/programs/fostercare/, last accessed January 12, 2026.

Footnote 8:The New Collegiate Dictionary, 12th Ed, available online at 
https://www.merriam-webster.com/dictionary/cast/spread%20one's%20net%20wide, last accessed January 10, 2026.

Footnote 9:That ACS has responded to the subpoena is not grounds deny respondent's motion to quash. People v Burnette, 160 Misc 2d 1005 (Sup Ct, New York County 1994) which involved a non-party subpoena on the NYPD is inapt as the non-party NYPD had moved for relief in that case. Here, respondent has standing to request the relief requested, despite ACS compliance with the subpoena.

Footnote 10:See Casas v Mercyfirst, 232 AD3d 756, 757 (2d Dept 2024), in a case alleging foster care abuse, the Appellate Division, Second Department remitted to the Supreme Court for a new determination on motion to quash after an in camera review of records produce by nonparty ACS.

Footnote 11:In the google.com search application the court searched "where is Hazen Street in NYC." The search revealed that Hazen Street is located on Rikers Island, which is neither surprising nor material and relevant. See Department of Corrections website, "Correction Facilities Locations, Rikers Island Facilities" available at 
https://www.nyc.gov/site/doc/about/facilities-locations.page, last accessed January 13, 2026.